GEORGE WASHINGTON LIFE INSUR-
ANCE COMPANY, Appellant,

v.

Mary G. ADAMS, Appellee.

Court of Appeals of Kentucky.

June 14, 1974.

As Modified on Denial of Rehearing
Oct. 11, 1974.

Leslie W. Morris, II, Stoll, Keenon & Park, Lexington, for appellant.

David Van Horn, Errol Cooper, Jr., Lexington, for appellee.

STEINFELD, Justice.

George Washington Life Insurance Company appeals from a judgment for $12,000 against it which was obtained by the beneficiary of a group life insurance certificate issued (effective March 1, 1968) by the company to the husband of the beneficiary. The insurance became incontestable two years after its issuance.[1] The insured died on February 11, 1970, from a myocardial infarction, which is a heart attack, about two weeks before the expiration of the two-year period. Before discussing the arguments which the company advances to obtain reversal, it is necessary that we dispose of a contention which appellee Mary G. Adams asserts should conclude this litigation.

The master policy provided:

"This Policy shall be incontestable after two years from its date of issue, except for nonpayment of premiums. No statement made by any person insured under the Policy relating to his insurability shall be used in contesting the validity of the insurance with respect to which such statement was made after such insurance has been in force prior to the contest for a period of two years during such Insured's lifetime and in no event unless it is in a written instrument signed by him, a copy of which is or has been furnished to such Insured or his beneficiary."

The certificate issued to Mr. Adams contained the following:

"No statement made by any person insured under the Group Life Insurance Policy relating to his insurability shall be used in contesting the validity of the insurance with respect to which such statement was made after such insurance has been in force for a period of two years during such person's lifetime and in no event unless it is in a written instrument signed by him, a copy of which is or has

been furnished to such person or his beneficiary."

At the time of the issuance of the certificate, KRS 304.850 provided as to group life insurance as follows:

"There shall be a provision that the validity of the policy shall not be contested, except for nonpayment of premiums, after it has been in force for two years from its date of issue; and that no statement made by an individual insured under the policy relating to his insurability shall be used in contesting the validity of the insurance with respect to which such statement was made after such insurance has been in force prior to the contest for a period of two years during such individual's lifetime nor unless it is contained in a written instrument signed by him."

■ Mrs. Adams claims that the trial court erred in not granting her a summary judgment on the ground that appellant took no action to void the insurance within the two-year contestable period. She says that inconsistent language in the incontestable clause in the master policy is ambiguous, therefore it and the certificate must be construed most favorably to the insured. Universal Underwriters Insurance Company v. Travelers Insurance Company, Ky., 451 S.W.2d 616 (1970). Both the master policy and the certificate make it clear that the clauses with reference to contestability for misstatements in an application are inapplicable if the insured dies before his insurance has been in force for a period of two years. The contest was permissible. Taylor v. American Heritage Life Insurance Co., 448 F.2d 1375 (CCA 4, 1971). Also see Couch on Insurance, Section 72.-48, and Insurance Law and Practice, Appleman, Section 318.

■ The thrust of the company's appeal centers upon the failure of the insured to properly answer questions on the applica-

---

1. Group life insurance policies were required to have a two-year incontestability clause. KRS 304.850. This statute was repealed. Acts 1970, Chap. 301.

tion form which had been mailed to him to fill out.[2] Without any assistance from a representative of the company, Mr. Adams completed the application and executed it on January 27, 1968. Pertinent questions and responses thereto were,

"7b. Have you within the last 5 years been hospitalized or received any medical or surgical advice or attention? If 'Yes', give name of each physician or hospital, the nature of each disability, and all dates.

A. Yes. D. M. Royalty—Central Baptist Hosp. Hemorrhoidectomy.

7c. Have you ever had or consulted a physician or practitioner for or have you ever been told that you have a heart condition, high blood pressure, cancer, diabetes, lung, liver, kidney or stomach disorder, or any other physical impairment? If 'Yes', give full particulars and dates.

A. No.

7d. Are you now in good health? If 'No', give full particulars.

A. Yes."

Immediately above Mr. Adams' signature on the application appeared the following statement:

"I represent that to the best of my knowledge the above statements * * * are full, complete and true, and I agree that they shall be the basis on which the insurance hereby applied for may be granted."

Mrs. Adams admitted that her husband had undergone treatment for peripheral vascular disease, which treatment started in July 1965, and continued from time to time thereafter. Mr. Adams saw his physician, Dr. Richard Hench, on various occasions starting in 1965 and continuing each year thereafter, including August 11, 1967, February 2, 1968, and a day in May 1968. Dr. Hench testified that " * * * the main reason (he) saw him from time to time from 1965, actually up until close to his death was for the peripheral vascular disease condition."

George Washington's chief underwriter testified that with this type of insurance the company issued only standard certificates and that no special class certificates were issued whereby the company charged a higher premium to compensate for a " * * * history of physical impairment." He explained that with nonmedical type of group life insurance the company relied entirely on the application and the answers to the questions which were made by the applicant because they had no report of a physical examination made by a physician. He said that in issuing the policy to Mr. Adams the company relied solely on the information which appeared on the application form mailed in by Mr. Adams, and that the application would not have been accepted and the certificate would not have been issued if Mr. Adams had stated on his application that he had been treated for a peripheral vascular disease condition. He stated that " * * * the usage among life insurance companies generally in 1968 in administering this type of group program" would have caused those companies to reject the application if the truth had been known. The evidence with respect to the usual custom of insurance companies was corroborated by other experts in the field.

To counteract the insurance company's evidence, the claimant produced only one witness, a man who had been a general insurance agent since March 1969, and whose qualifications to testify concerning the usual custom of life insurance companies in accepting or rejecting applications for life insurance were suspect. He explained that he had read Dr. Hench's deposition in order to become familiar with

2. KRS 304.851 provided that statements made by a group policyholder or the insured are representations and not warranties. This statute was repealed. Acts 1970, Chap. 301.

peripheral vascular disease. He was interrogated and answered in part as follows:

"D15. And what is the usual practice in the insurance business in which in related communities concerns the insuring of someone with that condition?

A. This would most likely be accepted.

D16. Would that disease prevent someone from being insured, in your opinion?

A. No, not in my opinion. No."

\* \* \* \* \* \*

X44. Have you ever had any experience with a group plan on which only standard certificates were offered; that the man was either accepted or rejected and that there were not any special class policies or special class certificates offered and only a single premium?

A. No. That, like you say, is usually not through an agent.

X45. Would you have any way of knowing whether or not the program that I have reviewed with you was acceptable and in accordance with life insurance practice generally in 1968?

A. No."

With respect to questions 7c and 7d, it was held in Metropolitan Life Ins. Co. v. Walters, 215 Ky. 379, 285 S.W. 252, 60 A.L.R. 194 (1926), that an insurance company cannot reasonably make it a blanket *condition of the policy* that the insured is in sound health, or that he has never been attended by a physician for any serious disease or complaint, but that opinion does not directly or satisfactorily address the question of whether similarly-worded questions *in the application* are likewise to be considered ineffective. Our conclusion in this regard is that the latter question should depend on the facts of the case. For example, it is doubtful that a failure to mention treatment for some serious complaint 20 years before, which has not recurred or is not of a permanent nature, could have dispositive significance. But a failure to disclose similar circumstances that occurred, say, only last week should not be dismissed out of hand simply because the question is unreasonably broad. In this instance, we think that the vascular condition for which Mr. Adams was being treated from time to time certainly was one that this series of three questions (7b, 7c and 7d) fairly and unmistakably called upon him to disclose. The insurance company was entitled to know it before it issued the policy, and the loss of that opportunity cannot be rectified by the testimony of other people in a trial that other insurance companies would have issued the policy anyway.

The motions made by the appellant for a directed verdict in its favor and for judgment notwithstanding the verdict should have been granted. Kentucky Central Life Insurance Co. v. Combs, Ky., 432 S.W.2d 415 (1968), and Pennsylvania Life Insurance Co. v. McReynolds, Ky., 440 S.W.2d 275 (1969).

The judgment is reversed with directions to enter a judgment dismissing the action.

OSBORNE, C. J., and JONES, MILLIKEN, PALMORE, REED, STEINFELD and STEPHENSON, JJ., sitting.

OSBORNE, C. J., and MILLIKEN, PALMORE, REED and STEINFELD, JJ., concur.