Shirley B. SUSKIND

v.

NORTH AMERICAN LIFE & CASUALTY COMPANY, Appellant.

No. 78–2591.

United States Court of Appeals,
Third Circuit.

Argued Sept. 4, 1979.
Decided Oct. 10, 1979.

Roderick R. McKelvie (argued), James McC. Geddes (argued), Richards, Layton & Finger, Wilmington, Del., for appellant.

Daniel L. Twer (argued), Levin, Spiller & Twer, Wilmington, Del., for appellee.

Before SEITZ, Chief Judge and GIBBONS and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

This appeal concerns the interpretation of an incontestability clause in a group insurance policy. Defendant insurance company appeals entry of summary judgment against it.

Plaintiff is the widow of Walter B. Suskind and named beneficiary of a certificate of insurance for $50,000 issued by defendant, North American Life & Casualty Company (hereafter "North American"), to Suskind in conjunction with a group life insurance policy covering the employees of Walter B. Suskind and Associates, an insurance agency in Wilmington, Delaware. Plaintiff's husband, Walter B. Suskind, was the sole proprietor of the agency and was a general agent for Mutual Benefit Life Insurance Company (an insurance company

not involved in this litigation). Through Walter B. Suskind and Associates he employed a number of other insurance agents and office personnel.

In April, 1973, Suskind first became aware that he had cancer of the pancreas. Inquiry was made of at least eight insurance companies regarding the issuance of an individual or group life insurance policy insuring Walter Suskind's life. Although the record is unclear when the inquiries were made or whether applications were actually made to all eight companies, it is undisputed that between June, 1973 and July, 1973 at least three group policies were issued covering some or all of the employees of Walter B. Suskind and Associates, including in each instance Walter Suskind. None of these policies required evidence of the medical condition of the individuals covered, and Suskind did not inform the companies that he had cancer.

The application for the group policy involved in this appeal was enclosed in a letter by Walter Suskind dated June 14, 1973,[1] which requested a June 1 effective date. Because the carrier always used an effective date on the 15th of a month, the policy when approved was issued by North American with an effective date of June 15, 1973. Walter Suskind died of cancer on April 28, 1974, following periods of hospitalization and treatment.

Plaintiff filed suit against North American on January 27, 1976, for $50,000 plus an assessment of punitive damages and attorney's fees, claiming that defendant willfully and without reasonable justification or excuse refused to pay her benefits due under the policy. North American's Answer to the Complaint, filed March 4, 1976, denied liability alleging the policy "is null, void and of no effect" because of the misrepresentation of Suskind and others as to the number of eligible employees actually at work and because "Walter B. Suskind was not an eligible employee working on a full-time basis, having contracted an inoperable metastatic carcinoma sometime before he made said statements and misrepresentations."

On June 17, 1977, following discovery, defendant filed a motion for summary judgment, contending that plaintiff should be barred from recovery under the policy for two reasons: first, it argued that Walter Suskind was not an eligible employee under the policy, because he was not in "active service"[2] on the effective date of the policy, since he was admittedly hospitalized on June 15, 1973, and that he did not thereafter become eligible because he did not complete the waiting period of 21 consecutive working days required by the policy.[3] Second, North American argued that whether or not Suskind was an eligible employee under the policy, his misstatements, omissions and concealments concerning his health and his status at work breached various duties that he owed to the defendant so that his coverage under the policy should be

---

1. An application for coverage under a policy subsequently issued by American Republic Insurance Company was forwarded by Walter Suskind by letter dated June 11, 1973. Suit by plaintiff against American Republic for the amount of the certificate issued by that company to Suskind, $25,000, was consolidated with this case in the court below. American Republic did not appeal the court's order granting summary judgment to the plaintiff.

2. The policy defined active service as follows: An *Insured Person* will be considered in *Active Service* on a day which is a scheduled work day if he is performing in the customary manner all of the regular duties of his employment on a full-time basis either at his customary place of employment or at some location to which that employment requires him to travel, or if he is absent from work solely by reason of vacation and at the time his Insurance would otherwise become effective he has not been absent from work for a period of more than three consecutive weeks. An INSURED PERSON will be considered in ACTIVE SERVICE on a day which is not a scheduled work day only if he was performing in the customary manner all of the regular duties of his employment on the last preceding scheduled work day.

3. The policy provided that:
Notwithstanding the Eligibility Requirements above, insurance will not be effective until completion of the following waiting period. WAITING PERIOD:
(1) For persons in ACTIVE SERVICE on or before the Policy Effective Date: None
(2) For persons whose ACTIVE SERVICE began after the Policy Effective Date: 21 consecutive working days.

declared void. Plaintiff resisted summary judgment by a different construction of the policy and facts. Plaintiff conceded that Suskind was not in "active service" on June 15, 1973 but argued that he returned to "active service" on June 18, 1973, that no waiting period was required for Suskind because he had been in "active service" "before the Policy Effective Date" (see note 3), and that under the provision of the policy that "an individual's effective date is the 15th of the month, coinciding with, or next following the date of his eligibility if in ACTIVE SERVICE on that date, or otherwise 'upon his return to ACTIVE SERVICE'," [4] he was covered by the policy as of July 15, 1973.

Plaintiff countered the alleged breach of duty by emphasizing that there was no physical examination, medical questionnaire or evidence of insurability required to be furnished by Suskind or any other group member as a precondition to issuance of the policy and coverage in question.

On December 20, 1977 the court denied defendant's motion for summary judgment because "the Court finds the facts in these cases might cause reasonable men to draw inconsistent inferences and conclusions.

Such inferences should be drawn by the finder of facts after hearing the evidence presented and not by the Court in disposing of a motion for summary judgment."

Plaintiff then moved for summary judgment on the ground that defendant was barred from raising the defenses asserted in its Answer because of the incontestability provision in the policy. The applicable language of the North American policy is:

INCONTESTABILITY: The validity of the Policy will not be contested by the Company after two years from the Effective Date except for non-payment of premiums. No statement made by an *Insured Person* or *Insured Dependent* relating to insurability will be used in contesting the validity of the Insurance with respect to which the statement was made after the Insurance with respect to that individual has been in force prior to contest for a period of two years during the individual's lifetime nor will any such statement be used unless it is contained in a written instrument signed by him.

Delaware law, applicable here, requires that an incontestability provision be included in every group policy delivered in the State of Delaware.[5]

---

4. The policy provided in Amendment No. 1: Insurance will become effective for an INSURED PERSON on the 15th day of the month coinciding with or next following the first of the dates indicated below, provided the INSURED PERSON has agreed to make the *required contributions toward the cost of* the amount of insurance to which he is entitled, and further provided that the INSURED PERSON is in ACTIVE SERVICE on that date, otherwise his Effective Date will be deferred until his return to ACTIVE SERVICE;
(a) the date of completion of any applicable waiting period or if none, upon the date of his eligibility if application is made on or before the date of eligibility, or,
(b) the date of completion of any applicable waiting period or if none, upon the date of written application if made within 120 days following date of eligibility for units with 10 or more eligible Employees or; the date of completion of any applicable waiting period or if none, upon the date of written application if made within 31 days following date of eligibility for units with less than 10 eligible Employees, or,

(c) the date of approval of evidence of insurability by the Home Office of the Company (such evidence to be furnished without expense *to the Company) if written application* is made (1) more than 120 days after the date of eligibility for units with 10 or more eligible Employees; or more than 31 days after the date of eligibility for units with less than 10 eligible Employees, or (2) following previous termination of insurance while the INSURED PERSON remained eligible for insurance hereunder.

5. The Delaware Insurance Code provides:
§ 3113. Incontestability.
The group life insurance policy shall contain a provision that the validity of the policy shall not be contested, except for nonpayment of premium, after it has been in force for 2 years from its date of issue, and that no statement made by any person insured under the policy relating to his insurability shall be used in contesting the validity of the insurance with respect to which such statement was made after such insurance has been in force prior to the contest for a period of 2 years during such person's lifetime nor un-

The district court granted plaintiff's motion for summary judgment. The court held that the incontestability clause barred the defendant's assertion of both the ineligibility defense and the fraud defense. 458 F.Supp. 680.

To reach this result, the court read the first sentence of the incontestability provision as applicable to both the group policy and the individual insurance issued under it; both became incontestable when the period specified in that sentence had expired. The court read the second sentence "as an exception which allows an ongoing right to contest the individual insurance, when the insured dies prior to the expiration of the contestability period and the contest is based on written statements by the insured relating to his health or physical condition." 458 F.Supp. at 685. The court classified the defense based on eligibility as one contesting the "validity" of the decedent's insurance, and therefore within the terms of the first, and not the second, sentence of the incontestability provision. Since the term "contest" is generally interpreted to mean some action taken in a judicial proceeding to cancel the policy or prevent its enforcement, see *Travelers Insurance Co. v. Caravasilis*, 21 Del.Ch. 164, 182 A. 412 (1936), and North American's first such action took place when it filed its Answer to the Complaint in this case more than two years after the policy was issued, the court held that the defense based on eligibility was barred by the incontestability provision.

Further, the court held that the defense based on fraud was likewise barred because it did not fall within the exception provided by the second sentence which is limited to statements relating to "insurability". Although defendant had argued that Sus-

kind's written statement on his enrollment card regarding his "full-time" status or "eligibility" were statements relating to his "insurability", thereby within the exception provided by the second sentence of the incontestability provision, the Court concluded that such a construction would contravene the intent of the Delaware legislature which elsewhere had distinguished between the concepts of eligibility and insurability.[6]

Because we believe that the district court misconstrued the incontestability provision in North American's policy, we reverse.

The incontestability clause in insurance policies was introduced by English life insurance companies in the middle of the nineteenth century to overcome public resistance to the purchase of such insurance, and was adopted in the United States for similar reasons. Villaronga, The Incontestable Clause: An Historical Analysis 3–6 (1976) (Monograph No. 5, S.S. Huebner Foundation for Insurance Education, Wharton School, University of Pennsylvania); *see* J. Fowler, History of Insurance in Philadelphia for Two Centuries 729 (1888). Exposure of various abuses in the life insurance industry led President Theodore Roosevelt to call a conference in 1906 which recommended enactment of uniform life insurance laws. Included among the recommendations was the suggestion for a provision making the policy incontestable after two years from its issue date. This, in time, was adopted by most states. Shield, *A New Look at the Incontestability Clause*, 11 Association of Life Insurance Council Proceedings 23, 32–36 (1952).

The language of such clauses, often abstruse, has spawned a considerable volume of case law concerning its appropriate interpretation. However, issues relating to its

---

less it is contained in a written instrument signed by him. Del.Code Ann. tit. 18, § 3113. The Code also provides that every policy of group life insurance delivered in the State must contain a provision at least as favorable to the persons insured as the above. Del.Code Ann. tit. 18, § 3111.

**6.** The court referred to the section of the Delaware Group Life Insurance Law which requires inclusion of a provision in each group policy:

"setting forth the conditions, if any, under which the insurer reserves the right to require a person *eligible* for insurance to furnish evidence of individual *insurability* satisfactory to the insurer as a condition to part or all of his coverage." (emphasis added by the district court). Del.Code Ann. tit. 18, § 3115.

use in the context of the group policy remain unresolved.

## I.

█ Central to the district court's disposition of this matter was its conclusion that the first sentence of the provision ("The validity of the Policy will not be contested by the Company after two years from the Effective Date except for non-payment of premiums") encompasses both the group policy and the individual insurance issued under it. If this were so, then the failure of the company to contest within two years of its effective date, June 15, 1973 (its first judicial action being the filing of an Answer denying liability on March 4, 1976), would have barred suit under the incontestability clause, assuming that the defenses raised, ineligibility and fraud, fall within the concept of "validity of the policy."

There are several reasons why we believe the first sentence of the incontestability clause relates only to the group policy. First, the language of the sentence itself refutes its application to the individual's insurance. Under group insurance, the only "Policy" that is issued is the master policy covering the group. The individual group member receives a Certificate of Insurance, not a "Policy", and that certificate refers to the provisions and conditions set forth in the master "Policy." 1 Appleman, Insurance Law and Practice § 46, at 46–47 (1965). A certificate issued to an employee is part of the insurance contract under a group policy. 19 Couch on Insurance § 82.7 (2d ed. 1968). The distinction is carefully observed throughout the language of the master policy in issue which by its express terms provided the Certificate did not constitute a part of the Policy:

> CERTIFICATES: The Company will issue to the Policyholder for delivery to each *Insured Person,* an Individual Certificate summarizing the benefits for which the *Insured Person* is insured by the Policy including any changes in the amount of Insurance because of a change in classification and the rights to which such *Insured Person* is entitled in case of termination of Insurance or termination of the Policy. Such Certificate will not constitute a part of the Policy nor will it change, modify or invalidate any of the terms and conditions of the Policy.

Second, the court's construction strains the language of the second sentence of the incontestability provision. If the first sentence covers both the group policy and the individual's insurance, the court was obliged to find some explanation for the second sentence. This was done by reading it as an exception, notwithstanding that the language does not read as an exception. A reading of the provision more in keeping with its syntax and choice of language is that the first sentence refers to the group policy and provides that two years after the issue date, the validity of the policy can no longer be challenged; the second sentence contributes incontestability for the individual insurance covered by the Certificate and bars the company from contesting payment on the basis of written statements made by the insured relating to his/her insurability after the insurance has been in force for two years during the lifetime of the insured.

There is nothing in the legislative history upon which the court relied that would conflict with this construction. The court noted that the Delaware legislature revised the statute in accordance with language recommended by the National Association of Insurance Commissioners (NAIC) for the purpose of providing incontestability for individuals insured under group life insurance after two years.[7] Even if this is believed also to have been the Delaware legislature's purpose, the construction we place on the statute is entirely consistent with this legislative goal, since it interprets the second sentence as one providing an incontestability provision on behalf of individuals insured under the group policy.

The district court was concerned that the protection afforded would be too limited for

---

7. Delaware adopted the language proposed by the NAIC in 1946 for the revised incontestabili-ty clause as part of a revision of its Insurance Code in 1968. 56 Del.Laws c. 380, § 3113.

the individual because it relates only to statements as to "insurability", equated by the court with the insured's health, which may not be required in the group policy context. Even if the court's restrictive definition of "insurability" is correct,[8] there are instances in which individuals insured under a group policy have been required to make statements regarding their medical history, medical condition, and recent hospitalization. *See, e. g., George Washington Life Insurance Co. v. Adams*, 514 S.W.2d 205 (Ky.1974); *Wright v. Minnesota Mutual Life Insurance Co.*, 271 S.C. 211, 246 S.E.2d 866 (1978); *General American Life Insurance Co. v. Wojciechowski*, 314 Mich. 275, 22 N.W.2d 371 (1946); *Continental Assur. Co. v. Henson*, 297 Ky. 764, 181 S.W.2d 431 (1944). Moreover, the insurance policy in issue in this case required submission of evidence of insurability for late applicants and persons whose insurance had previously terminated, (see note 4 *supra*), further demonstrating that the second sentence provides a measure of meaningful protection.[9]

Third, such precedent as exists supports our construction of the incontestability provision. In *Taylor v. American Heritage Life Insurance Company*, 448 F.2d 1375, 1377, 1378 (4th Cir. 1971), the court, faced with a similar incontestability provision, held that "[b]y its terms, the first sentence of the incontestability clause does *not* refer to individual certificates of insurance" and that "only the second sentence of the incon-

testability clause is pertinent to the certificate." See also *Wright v. Minnesota Mutual Life Insurance Co.*, 271 S.C. 211, 246 S.E.2d 866, 868 (1978) ("Here, the two provisions of the incontestability clause are not inconsistent and each may be given effect. The first provision refers specifically to the group policy issued to August Kohn, while the second provision refers to certificates of insurance issued under the group policy to persons indebted to August Kohn. The distinction between these references is material."); *Downs v. Prudential Insurance Company of America*, 130 N.J.Super. 558, 328 A.2d 20 (1974).

## II.

Plaintiff argues that defendant failed to contest the policy within the time period required by its "incontestability" provision, referring to the "overwhelming weight of authority" defining contest to mean some affirmative or defensive action taken in court to cancel the policy or prevent its enforcement. Although plaintiff's proposition as to the meaning of "contest" has ample support, *see, e. g., Franklin Life Insurance Co. v. Bieniek*, 312 F.2d 365, 368 (3rd Cir. 1962), it can only operate to bar contests relating to the validity of the policy under the first sentence of the incontestability clause at issue.

 The language of the second sentence differs considerably from that in the provi-

---

8. Defendant insurance company suggests that "insurability" is not limited to the condition of the employee's health, citing in support the language in *Crawford v. Equitable Life Assurance Society of the United States*, 56 Ill.2d 41, 305 N.E.2d 144, 152 (1973) where the dissenting judge stated there is no distinction "between noninsurability based on illness and noninsurability based on failure to be employed for a minimum number of hours during each week." It is arguable that because the active service requirement in a group policy acts as a substitute for medical evidence, representations as to both should be classified similarly. Were this construction accepted, it would propel the insurance company along a hazardous route because it would follow that actions on misrepresentations regarding active service encompassed within "insurability" would be barred once the insured survives beyond the

incontestability period. This would seriously undermine the company's position that eligibility is an element of coverage never barred by the incontestability clause. Because of the posture of this case, we need not deal with the district court's definition of "insurability."

9. Although eligibility for coverage under a group policy may not ordinarily be dependent on the production of evidence of good health and past medical history for those who come into the plan during designated enrollment periods, late entrants and those seeking higher coverage than normally provided often must make such a production. See Read, The *Evolving Incontestability Clause in Group Life Policies*, 14 Association of Life Insurance Council Proceedings 797, 803 (1959).

sions involved in the cases cited by plaintiff. In this policy, the incontestability period begins only "after the insurance with respect to the individual has been in force prior to contest for a period of two years *during the individual's lifetime*" (emphasis added). This use of the words "during the individual's lifetime" is significant.

In *Mutual Insurance Company v. Hurni Co.,* 263 U.S. 167, 44 S.Ct. 90, 68 L.Ed. 235 (1923), the Court held that the death of the insured within the two-year period provided by the incontestability clause did not suspend the running of the period of contestability. The incontestability clause in that case did not have language tying the period to the "individual's lifetime." [10] See also *Monahan v. Metropolitan Life Insurance Co.,* 283 Ill. 136, 119 N.E. 68 (1918). In order to overturn this construction, the insurance companies prevailed upon the state legislatures to amend the statutory language mandated for the incontestability clause to permit insertion of the phrase making the policy incontestable after being in force "during the lifetime of the insured" for a specified period. See Villaronga, *supra* at 34. This language was adopted by the National Association of Insurance Commissioners, whose suggested provision served as the model for the Delaware statute. As noted in *Carpentieri v. Metropolitan Life Insurance Co.,* 138 Pa.Super. 1, 7, 10 A.2d 37, 39 (1939) "[O]ne of the objects sought to be attained by the insertion of the clause ["during the lifetime of the insured"] was the protection of the company from imposition by persons who might procure insurance by concealing ill health of such a serious nature as to cause death within a year."

The Fourth Circuit decision in *Taylor* serves once again as precedent. There, the court also held: "It follows that the certificate was not incontestable since Mr. Taylor did not live for two years after its date of issuance." 448 F.2d at 1378. Accord, *Reliance Life Insurance Co. v. Everglades Discount Co.,* 204 F.2d 937, 942 (5th Cir. 1953); *Greenbaum v. Columbian National Life Insurance Co. of Boston,* 62 F.2d 56, 58 (2d Cir. 1932); *George Washington Life Insurance Co. v. Adams,* 514 S.W.2d 205, 206 (Ky.1972). Whether or not the insurance ever became effective as to Suskind, a matter that the defendant contests and upon which we express no view, his death in 1974 means that he failed to satisfy the two-year requirement that is a precondition to operation of the second sentence of the incontestability clause. Thus, the death of Walter Suskind prior to the expiration of the period after the insurance allegedly became effective as to him suspended the operation of the incontestability clause as to his individual insurance coverage, and neither of the defenses alleged is barred.

### III.

The parties have briefed and argued the issue alluded to by the district court as to whether the incontestability clause bars a contest to individual coverage under a group policy based on the insured's ineligibility. In *First Pennsylvania Banking & Trust Co. v. United States Life Insurance Co.,* 421 F.2d 959 (3rd Cir. 1969), this court held that Pennsylvania would follow the logic and reasoning of the line of cases holding that the only defenses proscribed were those going to the validity of the policy because of noncompliance with conditions or the falsity of representations or warranties, and that the incontestability clause could not be construed to enlarge the coverage of the policy to compel an insurance company to insure lives it never intended to cover. The clause interpreted in that case did not contain language comparable to that in issue here which makes incontestable after two years' survival the written statements of the insured relating to "insurability" (see note 8 *supra*). There are conflicting decisions in other jurisdictions construing clauses almost identical

---

10. The policy in *Hurni* stated: "This policy shall be incontestable, except for non-payment of premiums, provided two years shall have elapsed from its date of issue." 263 U.S. at 174, 44 S.Ct. at 90.

with that in issue in this case.[11] The district court's attempted resolution of the conflicting decisions was based on a construction of the clause which we have concluded was erroneous. The interpretation we place on the incontestability provision in this case relieves us of the necessity of delving into this particular maze, and we decline to do so.

## IV.

Defendant argues that there is no genuine issue of material fact and that the district court erred in failing to grant it summary judgment. There is a threshold question as to our jurisdiction to entertain defendant's claim, since ordinarily the denial of summary judgment predicated on a determination that there are genuine issues as to material facts which could be resolved only on a trial of the action is interlocutory in nature and hence unappealable. *Boeing Co. v. International Union,* 370 F.2d 969, 970 (3rd Cir. 1967). In *Morgan Guaranty Trust Company v. Martin,* 466 F.2d 593, 599–600 (7th Cir. 1972) (per curiam), the court suggested that Section 2106 of Title 28, U.S.C., gives the appellate courts authority to direct the entry of summary judgment in an appropriate case.[12] *But see Hart v. Overseas National Airways, Inc.,* 541 F.2d 386, 394 n. 19 (3rd Cir. 1976). In *Tabacalera Severiano Jorge S.A. v. Standard Cigar Co.,* 392 F.2d 706, 716 (5th Cir.), *cert. denied,* 393 U.S. 924, 89 S.Ct. 255, 21 L.Ed.2d 260 (1968), the court of appeals directed the entry of summary judgment for the appellants because it was clear that there was no material issue of any relevant fact under the law and the parties had ample time to develop the factual issues. This is not such a case.

■ Defendant concedes in its reply brief that there is a question of fact as to whether it is possible to interpret the contract to conclude that Suskind was an eligible employee. It submits its request for summary judgment on the alleged breach of duty by Suskind either as procuring agent for the insured or as employer and insured. However, whether Suskind made misstatements concerning his eligibility will in part depend upon the resolution of the dispute as to contract interpretation. If Suskind were in fact eligible for insurance as an employee in active service, his statements to that effect would not be misstatements. Furthermore, whether Suskind's concealment of his illness was intentional or material in light of the absence of questions regarding his medical status in the application are issues most appropriately left to the trial court.

We, therefore, will reverse the entry of summary judgment and remand this matter to the district court for further proceedings in accordance with this opinion.

---

11. *Compare John Hancock Mutual Life Insurance Co. of Boston, Mass. v. Dorman,* 108 F.2d 220 (9th Cir. 1939); *Equitable Life Assurance Society v. Florence,* 47 Ga.App. 711, 171 S.E. 317 (1933); *Freed v. Bankers Life Insurance Co. of Nebraska,* 216 N.W.2d 357 (Iowa 1974); *Simpson v. Phoenix Mutual Life Insurance Co.,* 24 N.Y.2d 262, 299 N.Y.S.2d 835, 247 N.E.2d 655 (1969); *Baum v. Massachusetts Mutual Life Insurance Co.,* 357 P.2d 960 (Okl.1960); *Cragun v. Bankers Life Co.,* 28 Utah 2d 19, 497 P.2d 641 (1972) *with Crawford v. Equitable Life Assurance Society,* 56 Ill.2d 41, 305 N.E.2d 144 (1973).

12. Title 28, Section 2106 provides:

The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances.