Doris E. TURNER, Plaintiff–Appellee,

v.

SAFECO LIFE INSURANCE COMPANY,
Defendant–Appellant.

No. 93–5039.

United States Court of Appeals,
Sixth Circuit.

Submitted Jan. 19, 1994.

Decided Feb. 18, 1994.

Robert E. Barnett, III, Kenneth E. Dunn (briefed), Barnett, Shanks & Dunn, Louisville, KY, for plaintiff-appellee.

Samuel G. Bridge, Jr. (briefed), Michelle Turner, Wyatt, Tarrant & Combs, Louisville, KY, for defendant-appellant.

Before: KENNEDY and NELSON, Circuit Judges, and CONTIE, Senior Circuit Judge.

DAVID A. NELSON, Circuit Judge.

This is an action brought in federal court pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, for recovery of a death benefit under a group life insurance policy. A trucking firm of which the decedent was a partner purchased the policy from the defendant insurance company after the decedent had stopped working because of what proved to be terminal cancer. The decedent was not actively at work when the policy became effective, and he did not return to work thereafter.

Under the language of the policy, as the insurance company interpreted it, the decedent never became eligible for coverage. Disagreeing with the company's interpretation, the district court entered summary judgment in favor of the claimant. Upon *de novo* review, we conclude that the decedent did not meet all of the requirements for eligibility; we shall therefore reverse the judgment for the plaintiff and direct that judgment be entered for the defendant.

I

The plaintiff, Doris Turner, was the wife of Ervin Lee Turner. Mr. Turner and two of his brothers were partners in a trucking business operated under the name Turner Expediting. Mr. Turner worked at the business from 1965, when the partnership was formed, until March of 1987. He went on sick leave at that time because of lung cancer, and he died on December 13, 1989. From March of 1987 until his death Mr. Turner performed no work at the firm.

On January 29, 1988, about ten months after the commencement of Mr. Turner's sick leave, the partnership applied to defendant Safeco Life Insurance Company for a group policy insuring the lives of its full-time employees and retirees. Eligible partners (treated as "employees" for this purpose) were to have coverage in the amount of $50,000. Coverage for all other eligible employees and for retirees was to be in the amount of $10,000.

Under the heading "ELIGIBILITY" the insurance application form contained these words: "All active regular full time employees of the policyholder working a minimum of —— hours per week (must be at least 20.)" As completed by the partnership, the blank was filled in with a handwritten number "30." The eligibility of active regular full-time employees was thus to be subject to their working a minimum of 30 hours per week, according to the application. It appears that more than 50 people were eligible for coverage.

The insurance company accepted the application and issued a group policy effective

February 1, 1988. The policyholder was identified as "Kent J., Kenneth E., Ervin L. Turner; dba Turner Expediting." The premiums were "self-administered" by the partnership, and premiums were paid with respect to all three partners.

A "SCHEDULE OF INSURANCE" incorporated in the policy listed three "Eligible Classes of Employees:" (1) partners, (2) all other active employees (a phrase changed effective June 1, 1988, to "all other eligible employees"), and (3) retirees.[1] The schedule of insurance provided that membership in one or the other of the first two eligible classes extended to "[a]ll regular full time employees of the policyholder working a minimum of 30 hours each week...."

The same minimum number of working hours per week appeared in the amended schedule of insurance that became effective on June 1, 1988. Under the heading "Eligible Classes of Employees," the amended schedule referred to "All regular full time employees of the policyholder working a minimum of 30 hours each week." The amended schedule went on to classify such employees as "Partners" (Class 1) and "All Other Eligible Employees" (Class 2).

A section of the policy entitled "EMPLOYEE PROVISIONS" specified, in its first sentence, that "[o]nly the employees of the classes shown in the Schedule are eligible." The next sentence said this: "An employee becomes eligible for employee insurance upon the completion of the service waiting period." (For eligible non-union employees, the schedule of insurance provided, the "service waiting period" was the first of the month following the date of employment.)

Elsewhere in the employee provisions section of the policy, under the caption "Date Employee Insurance Becomes Effective," the following language appeared:

"Insurance will become effective on the latest of the following dates if the employee is actively at work on that date:

(a) the date the employee becomes eligible;

(b) the date the employee reapplies for insurance which ended; or

(c) the date SAFECO approves the proof of good health, if required.

If the employee is not actively at work on the latest date specified above, insurance will become effective on the date the employee returns to active work."

The phrase "actively at work," according to the "DEFINITIONS" section of the policy, meant that the employee

"(a) normally does not work at home;

(b) reports for work on the date in question at the employee's usual place of work; and

(c) upon reporting, can perform all usual and customary duties on a regular basis."[2]

Under the caption "Continuance During Absence from Full–Time Work," the employee provisions section of the policy said that in the event of absence because of sickness or injury, employment would be deemed to continue indefinitely or until the policyholder terminated the employment.

After her husband's death, Mrs. Turner filed a claim for insurance benefits in the amount of $50,000. The insurance company denied the claim, explaining that the policy had not become effective as to Mr. Turner because he had not been actively at work on or after the effective date of the policy.[3] This lawsuit followed.

---

1. The June amendment eliminated coverage for retirees.

2. The "actively at work" definition continued as follows:

"If an employee:
(a) does not report; or
(b) normally works at home;
the employee is actively at work if, on the date in question, the employee is neither:
(a) hospital confined; nor
(b) disabled and unable to:
(1) report to a place of work outside of the employee's home; and
(2) perform all usual and customary duties on a regular basis."

3. In a letter to Kenneth Turner a SAFECO examiner stated:

"This policy states each eligible employee shall become insured on the date he becomes eligible for insurance. However, if he is not actively at

Having stipulated the facts, the parties filed cross-motions for summary judgment. The district court granted Mrs. Turner's motion and denied the insurance company's. The court reasoned that Mr. Turner had been actively at work upon completion of his service waiting period, shortly after the partnership was started in 1965, and he thus satisfied the eligibility requirements while actively working between 1965 and 1987. It was the court's belief that if such a person was still on the payroll when the policy became effective, even though absent because of sickness, the person remained eligible whether or not he ever returned to work.

The insurance company moved to alter or amend the judgment, inviting the court's attention to the contractual language on eligible classes of employees. The court denied the motion and made this observation on the company's argument:

> "Contrary to Safeco's assertion, the policy does not define the Eligible Classes of Employees as those who are 'actively at work.' Rather, the provision limits the eligible classes to those who are 'regular full time employees.' The court's opinion is not in conflict with the provision."

The company then perfected a timely appeal.

## II

■ It is true that the words "actively at work" do not appear in the "Eligible Classes of Employees" section of the schedule of insurance. It is not true, however, that the eligible classes include all regular full time employees regardless of whether such employees are working. As we have seen, the phrase "regular full time employees" is qualified by the words "working a minimum of 30 hours each week."

The verb is in the present tense. The insurance schedule, as we read it, speaks of regular full time employees who are working a minimum of 30 hours a week *now*—not employees who worked 30 hours a week before the policy became effective. And the policy, as we have noted, provides in language of absolute clarity that "[o]nly the employees of the classes shown in the Schedule are eligible." An employee not a member of a scheduled class is simply not eligible for coverage.

Membership in a scheduled class does not necessarily mean that an existing employee is covered as soon as the policy becomes effective, nor does it mean that a new employee is covered as soon as he starts working a minimum of 30 hours per week. An existing employee who is a member of a scheduled class—*i.e.*, an employee who is working at least the minimum number of hours per week—is covered from and after the effective date of the policy, as Safeco concedes, if he has already completed his service waiting period. An employee who starts after the effective date of the policy, however, will have to complete his service waiting period in order to be eligible even though he works at least 30 hours a week from the outset.[4]

The requirement that the service waiting period be completed is obviously a limitation on eligibility, not an expansion of it. The service waiting period provision does not purport to negate the requirement for member-

work on the day he is scheduled to become insured, he shall become insured on the day he returns to active work.

"This Group Policy became effective February 1, 1988. According to the information in our file, the last date Lee Turner worked was March, 1987. Because he was not actively at work nor did he return to work after the effective date of the policy, there is no benefit payable for the death occurring December 13, 1989."

4. It is not inconsistent, in our view, to read the "eligible classes" language as speaking from and after the effective date of the policy, while reading the "service waiting period" language as having retrospective effect for employees whose date of employment precedes the effective date of

the policy. The purpose of the service waiting period is to assure that each person covered by the policy has become a bona fide employee. People who meet this test when the policy becomes effective are covered immediately if they are otherwise eligible. There is no reason to suppose that *nobody* was intended to be covered during the first month of the policy's existence.

The literal language of the policy supports this view. Each employee has a finite date of employment that is likely to precede the effective date of the policy. To be a member of an eligible class, on the other hand, an employee has to be "working"—present tense—at least 30 hours per week. "Working," again, means working now— it does not mean "having worked."

ship in an eligible class. We see no reason not to read the provisions in harmony with one another—which means that from and after June 1, 1988, only regular full time employees working a minimum of 30 hours each week are eligible, and the eligibility does not begin until the service waiting period has been completed.

We see nothing contrary to this interpretation in the language captioned "Date Employee Insurance Becomes Effective." It says that "[i]nsurance will become effective" on the latest of three described dates "if the employee is actively at work on that date...." The first of the dates referred to is "the date the employee becomes eligible." In Mr. Turner's case, the district court thought, the date the employee became eligible was the first of the month following his date of employment in 1965. But although Mr. Turner was actively at work in 1965, the policy did not come into force until 1988. We are not prepared to read the policy language as saying that the insurance "will become effective" for Mr. Turner 23 years before the fact. What we think the policy is saying, rather, is that the insurance "will become effective" for Mr. Turner on the date he qualifies—on or after the moment at which the policy comes into force—as a member of an eligible class consisting of "[a]ll regular full time employees of the policyholder working a minimum of 30 hours each week." That date, unfortunately, never arrived.

We attach no significance, in this connection, to the fact that the policyholder of which Mr. Turner was an "employee" happened to be a partnership of which he himself was a member. The insurance contract provides for the payment of benefits on the death of eligible "employees," including eligible employees in the class designated "partners." It does not provide for the payment of benefits on the death of the business entity to which the policy has been issued.

■ The plaintiff asks us to conclude that the provision captioned "Continuance During Absence from Full–Time Work" means that Mr. Turner met the eligibility requirements. We can draw no such conclusion from the wording of this provision. What it says, we believe, is that Mr. Turner's employment should be deemed to continue indefinitely despite his absence from work due to sickness. Mr. Turner was thus an employee when the policy came into force, no doubt, but he clearly was not an employee "working a minimum of 30 hours each week." He was not a member of an eligible class listed in the schedule of insurance—and "[o]nly the employees of [such] classes," to repeat the crucial language of the policy, "are eligible."

■ Under ERISA, our construction of the insurance contract is governed not by state insurance law rules but by principles of federal law. See *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 56–57, 107 S.Ct. 1549, 1557–58, 95 L.Ed.2d 39 (1987). "[S]traightforward language in an ERISA-regulated insurance policy should be given its natural meaning." *Burnham v. Guardian Life Ins. Co.,* 873 F.2d 486, 489 (1st Cir.1989). Federal law gives us "no right to torture language in an attempt to force particular results or to convey delitescent nuances the contracting parties neither intended nor imagined." *Id.* Applying these principles here, we are led inevitably to the conclusion that Mr. Turner never became eligible for coverage because he never worked as much as 30 hours per week while the policy was in force.

### III

■ Mrs. Turner argues that a Kentucky statute which makes insurance coverage "incontestable" in some circumstances should be applied to prevent Safeco from denying liability for the death benefit. The incontestability statute provides that an insurer may not attack the validity of a policy it issued, except on the ground of nonpayment of premiums, once the policy has been in force for two years. The statute also provides that, after two years, coverage of an individual under a group life policy may not be contested on the basis of any statements made by the individual to the insurer "relating to his insurability." Kentucky Rev.Stat. § 304.16–130.

By its terms, the incontestability statute has no application here. Safeco is neither attacking the validity of the policy issued to the partnership nor contesting coverage on the basis of any statements made by Mr.

Turner. It is thus immaterial whether, as Mrs. Turner argués, the two-year period that must precede incontestability should be deemed to have run pursuant to Kentucky Rev.Stat. § 304.12–230.

The judgment of the district court is **REVERSED**, and the case is **REMANDED** with instructions to enter summary judgment in favor of the defendant.