Carolyn BASEHEART, Plaintiff,

v.

LIFE INSURANCE COMPANY OF NORTH AMERICA, d/b/a Cigna Group Insurance, Defendant.

Civil Action No. 95–0034BG(H).

United States District Court,
W.D. Kentucky,
Bowling Green Division.

April 24, 1997.

Michael A. Breen, Bowling Green, for Plaintiff.

Henry Brent Brennenstuhl, Kerrick, Grise & Stivers, Bowling Green, for Defendant.

## MEMORANDUM OPINION

HEYBURN, District Judge.

The Court has before it the parties' cross-motions for summary judgment. Plaintiff seeks to collect on her deceased husband's life insurance policy and Defendant disputes the amount she is entitled to collect. The issue central to the disposition of this case is whether the life insurance policy's incontest-

ability clause precludes Defendant's dispute over the benefits Plaintiff is entitled to receive. Although the Court decides the case in accordance with *Turner v. Safeco Life Ins. Co.,* 17 F.3d 141 (6th Cir.1994) and, therefore, in favor of Defendant, there are troubling aspects of that conclusion which the Court will discuss.

### I.

William Baseheart was a managerial employee of the Big Yank Corporation ("Big Yank"), a clothing manufacturer. As part of his employee benefits package, Mr. Baseheart was entitled to purchase life insurance under the Big Yank Corporation Group Insurance Plan ("the Plan"). The Plan was issued by The Equitable Life Assurance Society of the United States, a CIGNA group insurer, and was sponsored and administered by Big Yank.

Under the Plan, employees were eligible for a life insurance benefit. Specifically, employees were eligible for coverage in an amount equaling twice the employee's annual salary, up to a maximum coverage of $150,000. Big Yank funded the premium coverage for amounts up to $100,000. If the employee were eligible for insurance exceeding $100,000, the employee could purchase the additional coverage at the employee's own cost.

On May 11, 1992, Mr. Baseheart completed an enrollment and change form ("Enrollment Form") and purchased a total of $150,000 of life insurance under the Plan.[1] At that time, Mr. Baseheart's salary was $50,000. As a result, Mr. Baseheart was only eligible for $100,000 worth of life insurance under the Plan. Mr. Baseheart would only have been eligible to purchase "additional life" insurance if double his salary had been in excess of Big Yank's $100,000 premium coverage. Neither side disputes that Mr. Baseheart was not eligible for the $50,000 in additional

life insurance at the time he filled out the Enrollment Form.

Mr. Baseheart was assisted in filling out the Enrollment Form by Big Yank's payroll clerk, Lillie Reichback. According to Cigna Group Insurance ("Defendant"), she was not aware that the policy limited coverage eligibility to twice the employee's salary. Although the Enrollment Form had a space in which the employee's salary was to be entered, Mr. Baseheart and Ms. Reichback left that space blank. Defendant says that the Enrollment Form was filed in Big Yank's records and was not forwarded to the insurance carrier. Mr. Baseheart paid the premiums for this additional $50,000 in life insurance.

Mr. Baseheart died on June 15, 1994, a little over two years after his life insurance went into effect.[2] One month later, on July 15, 1994, Ms. Reichback submitted a proof of loss for life insurance benefits on behalf of Carolyn Baseheart, Mr. Baseheart's wife and beneficiary ("Plaintiff"). Defendant claims that it was only at this time that it realized Mr. Baseheart had completed an application for life coverage in excess of twice his annual salary. Defendant made payment of the $100,000 of life insurance benefits, for which Mr. Baseheart had been eligible, and denied benefits for the additional $50,000, for which Mr. Baseheart had not been eligible. Defendant has refunded the premiums Mr. Baseheart had paid for the additional $50,000.

### II.

Both parties agree that the Big Yank Plan is an ERISA plan. The Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, *et seq.,* is a comprehensive legislative enactment which regulates benefits provided by employers to employees. Cases involving benefits under an ERISA plan are governed by ERISA and the body of federal common law interpreting it. *Thompson v. American Home Assur. Co.,* 95

---

1. On the Enrollment Form, Mr. Baseheart selected life insurance coverage under the group plan by checking the box for "life." In addition, he purchased the additional $50,000 by checking the box for "additional life" and writing in the amount of $50,000.

2. The effective date of Mr. Baseheart's life insurance was June 11, 1992.

F.3d 429, 434 (6th Cir.1996); *Cromwell v. Equicor–Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir.1991). Consequently, cases dealing with the interpretation of provisions within an ERISA plan are governed by federal common law rules of construction. *See Turner v. Safeco Life Ins. Co.*, 17 F.3d 141, 145 (6th Cir.1994). Where the language of an ERISA plan is ambiguous, one must look to extrinsic evidence for clarification. *Helwig v. Kelsey–Hayes Co.*, 93 F.3d 243, 251 (6th Cir.1996), *cert. denied, Kelsey–Hayes v. Helwig,* — U.S. —, 117 S.Ct. 690, 136 L.Ed.2d 613 (1997); *Wulf v. Quantum Chemical Corp.*, 26 F.3d 1368, 1376 (6th Cir.1994). While federal law governs, the history of the incontestability clause within insurance plans has been litigated in state courts and those decisions are instructive in understanding the purpose and applicability of the incontestability clause at issue in this case.

### III.

Plaintiff relies on the Incontestability clause, which is contained among the General Provisions of the Plan. It provides:

*This policy will not be contested after it has been in force for two years from its date of issue, except for the failure to pay premiums.* A statement made by an employee as to his or her insurability may be used to contest the validity of the insurance with respect to which the statement was made, if: (i) the statement is in writing and is signed by the employee; and (ii) a copy of such statement is or has been furnished to the employee or his or her beneficiary. Such statement may not be used to contest the validity of such insurance after it has been in force prior to the contest for two years during the lifetime of the employee.

(Emphasis added).[3] If this clause were applicable in this case, Defendant would be precluded from denying the additional $50,000 in life insurance benefits, since the requisite two years have passed. However, Defendant argues that since it is contesting the extent to which Mr. Baseheart is covered under the Plan rather than the Plan's validity, the Incontestability clause does not apply. Defendant maintains that Mr. Baseheart's eligibility to purchase the additional $50,000 in life insurance coverage goes to the extent of coverage under the Plan rather than the Plan's actual validity.

Defendant's argument finds support in a recent Sixth Circuit opinion. *See Turner v. Safeco Life Ins. Co.*, 17 F.3d 141 (6th Cir. 1994). According to the Sixth Circuit, the question of eligibility under a group insurance plan goes to the extent of coverage of the insured, not to the validity of the plan. *See Turner,* 17 F.3d at 145. In *Turner,* a partnership's group policy insured the lives of its full-time employees and retirees. Eligible employees were to have coverage in the amount of $50,000 or $10,000 depending on whether the employee was a partner or not. The premiums were to be "self-administered" by the partnership and were paid with respect to all of the partners. Plaintiff's husband was one of the partners; however, the Court found that he never became eligible for the life insurance since he had not been a full-time employee on or after the effective date of the policy. *Turner,* 17 F.3d at 142–43. Upon the partner's death, his wife and beneficiary filed a claim and was denied benefits because the policy had never become effective. *Id.* at 143. Without any explanation or analysis, the court held that the incontestability statute, which provided that an

---

**3.** It should be noted that KRS 304.16–130 requires that all group life insurance policies include an incontestability provision. The statute says:

> There shall be a provision that the validity of the policy shall not be contested, except for nonpayment of premiums, after it has been in force for two (2) years from its date of issue; and that no statement made by an individual insured under the policy relating to his insurability shall be used in contesting file validity of the insurance with respect to which such statement was made after such insurance has been

in force prior to the contest for a period of two (2) years during such individual's lifetime nor unless it is contained in a written instrument signed by him.

This statute is made applicable to the Plan, even though the Plan is covered by ERISA, under 29 U.S.C. § 1144(b)(2)(A) (1988), which provides that a state law ordinarily preempted by ERISA is saved from preemption if it "regulates insurance." Since the language required under KRS 304.16–130 is substantially similar to the Plan's Incontestability clause, this Court will focus on the latter in its analysis.

insurer could not attack the validity of a policy it issued once two years had passed, had no application since the insurer was not attacking the validity of the policy. *Id.* at 145–46. That is, the insurer's argument that the partner never became eligible for the life insurance did not go to the validity of the policy and, therefore, was allowed.

Applying the Sixth Circuit's rule here, the Court must find that the Incontestability clause does not prevent the insurer from denying Plaintiff's claim based on Mr. Baseheart's lack of eligibility. The facts of *Turner* and our case are similar in all material respects. As in *Turner*, Mr. Baseheart never became eligible to purchase the insurance. While the partnership paid the partner's premiums in *Turner*, Mr. Baseheart paid his own premiums for the additional $50,000 in this case. However, this is a distinction without a difference. In both cases, the insurance was incorrectly purchased and the premiums were paid. Nonetheless, under the rule set forth in *Turner*, the denial of benefits based on the employee's eligibility does not go to the validity of the policy and, as a result, the incontestability provision does not apply.

## IV.

Despite its clear applicability, simply relying upon *Turner* without further analysis is troubling because the Sixth Circuit seemed to decide a major ERISA issue without discussing or acknowledging its complexity.

Eligibility goes to the heart of validity. The insurer in *Turner*, like Defendant in this case, argued that the policy had never become effective because the partner had never become eligible. *Turner*, 17 F.3d at 143. This position essentially argues that the policy never became valid. In contrast, coverage issues generally deal with a policy which is valid but which may or may not cover an event which has occurred under its terms.

The *Turner* court did not explain why an employee's eligibility, which directly implicated the effectiveness of the employee's insurance, should go to coverage under the policy rather than to the validity of the policy. Several other courts have dealt with this distinction in the context of group policies, and the resulting opinions fall along two irreconcilable lines. One line follows the decision in *Simpson v. Phoenix Mut. Life Ins. Co.*, 24 N.Y.2d 262, 299 N.Y.S.2d 835, 247 N.E.2d 655 (1969), in which an insurer was precluded from contesting an employee's eligibility after the period of contestability had run. The other follows *Crawford v. Equitable Life Assurance Society of the United States*, 56 Ill.2d 41, 305 N.E.2d 144 (1973), in which the incontestability clause was held to be inapplicable to the insurer's defense that the insured had never become eligible for insurance.

Of the two opinions, *Simpson* seems to offer a more compelling justification for its decision. Referring to an earlier opinion by Chief Judge Cardozo, in which the court distinguished between the types of defenses an insurer was allowed and not allowed under a policy with an incontestability provision, the *Simpson* court elaborated on that distinction by differentiating between "conditions of insurance" and "limitations of risk." A condition of insurance is a risk which the insurer is or should be aware of at the time it issues the insurance; a limitation of the risk cannot be anticipated at the time the insurance is issued. While an insurer can be deemed to have contracted to underwrite the former, it could not be assumed to have agreed to underwrite the latter. Therefore, while the insurer may always contest coverage over a limitation of risk, that is, over risks which could not have been ascertained at the time of contracting, it may not contest a condition of insurance. In this way, an insurer can guard against assuming a risk it does not desire to insure, simply by investigating conditions of insurance within the contestability period, and still remain free to contest those risks not ascertainable at the time of issuance. *Simpson*, 299 N.Y.S.2d at 839–40, 247 N.E.2d at 657–58.

Since this analysis is based on the amount of information the insurer can collect at the time of the policy's issuance, the hallmark of the distinction between conditions and limitations is discoverability. *Simpson*, 299 N.Y.S.2d at 840, 247 N.E.2d at 658. Information about an employee's eligibility, and particularly about his income level, can be

easily ascertained by the insurer at the time of issuance. In the case of income level, the insurer would only need to check the employer payrolls. Therefore, eligibility based on income would be a condition of insurance rather than a limitation of risk. The *Simpson* court could find no reason why discoverability would be hindered by a group, as opposed to an individual, policy. *Simpson*, 299 N.Y.S.2d at 840, 247 N.E.2d at 658. Just as insurer for an individual plan would have to conduct an investigation to determine the health status of an individual seeking private insurance,[4] an group insurer can determine employment eligibility by looking at membership rolls, employee payrolls and employment records. *See Simpson*, 299 N.Y.S.2d at 841, 247 N.E.2d at 658–59.

In contrast, the *Crawford* court depended on a purely technical interpretation of the principles behind the incontestability clause to defend its holding. The *Crawford* court explained that with group insurance, the master policy provides insurance for a collection of unnamed persons defined only in terms of membership in a class. *Crawford*, 305 N.E.2d at 149. Therefore, a challenge to eligibility does not involve an attack on the validity of the master policy, but on the coverage of one member of the class. *Crawford*, 305 N.E.2d at 149. The only aspect of the insurance plan which is affected is the payment sought by a single beneficiary. *Crawford*, 305 N.E.2d at 149.

However, this analysis ignores the reality behind group insurance policies. Group policies are not like employer indemnity policies, such as worker's compensation, where the employer benefits from the protection provided by the plan and the employees are only beneficiaries to the extent they can recover under it. Instead, group policies are essentially the same as a number of individual plans for the policyholder's employees. The employees, while benefitting from the employer-insurer arrangement, are the actual insureds under the plan. The employer, on the other hand, does not receive a direct insurance benefit from the Plan. Therefore, the conditions of insurance and limitations of risk should be applied to the insureds, individually. As the *Simpson* court pointed out, there is no distinction between the group and individual policies which merits different treatment of the insureds.

Like the *Crawford* opinion, the basis for the *Turner* court's decision appears to be the structure of the group life insurance policy under the Plan. Technically, the life insurance policy at issue is the one between Big Yank and Defendant; that is, the group policy, not the employees' individual insurance. The policyholder is Big Yank not Mr. Baseheart. Defendant is not arguing that the policy between Big Yank and Defendant is invalid, but rather that the scope of the coverage under the group policy excludes Mr. Baseheart. Under this analysis, Defendant's argument would seem to go to coverage rather than validity.[5]

The Third Circuit has dealt with the issue of whether the policy at issue in an incontestability provision was the master policy or the individual employee's insurance. *See Suskind v. North American Life & Casualty Co.*, 607 F.2d 76, 81 (3d Cir.1979). In *Suskind*, the court held that the policy at issue was the master policy. *Id.* The court based its decision on the master policy's definition of the individual certificates of insurance given to the employees which provided that the certificates would not constitute a part of the master policy; the construction of the incontestability provision itself, and other cases

---

4. For example, insurers generally require physical examinations and investigate an individual's medical history before determining whether to insure an individual and what level of premiums to charge.

5. If this case involved a individual rather than group policy, an insurance company could not deny claims under the policy if it discovered, two years later, that the individual had not fulfilled the conditions of insurance. *See Poffenbarger v.*

*New York Life Ins. Co.*, 277 F.Supp. 726, 730 (S.D.W.Va.1967) (explaining that where the incontestability provision states that the " 'validity of the insurance on any employee shall not be contested,' " the insurer was precluded from denying benefits based on the insured's ineligibility); *Maxwell v. Cumberland Life Ins. Co.*, 113 Idaho 808, 748 P.2d 392, 395 (1987) (holding that an incontestability provision precludes the insurer from denying benefits based on the insured's misstatement of his age).

which interpreted the incontestability clause to apply only to the master policy. *Id.*

*Suskind* is different from this case, however. First, the definition of "individual certificates" under the Plan does not state that the certificates do not constitute the individual employee's insurance policies as it did in the *Suskind* plan.[6] Second, while some cases have read the incontestability clause to refer only to the master policy, a number of them have read it the other way. *See, e.g., Vogel v. Independence Fed. Savings Bank*, 728 F.Supp. 1210 (D.Md.1990); *Halstead Consultants, Inc. v. Continental Casualty Co.*, 181 Ariz. 459, 891 P.2d 926 (App.1994); *Groll v. Safeco Life Ins. Co.*, 388 Pa.Super. 556, 566 A.2d 269 (1989); *Cragun v. Bankers Life Co.*, 28 Utah 2d 19, 497 P.2d 641 (1972).

Nonetheless, the Incontestability clause of the Big Yank Plan does seem to apply only to the group policy; the title of the provision states "INCONTESTABILITY. Applicable to Group Life Insurance." By its strict terms, the first clause of the Incontestability clause applies to the group policy, not to the individual employee's insurance; and the remainder of the Incontestability clause applies not to the group policy, but to the specific "insurance with respect to which the statement was made." Consequently, the result ordained by *Turner* is not without textual support.

■ Conceptually, it would seem that incontestability clauses are meant to assure the insured party that its dependents will be provided for upon its death. The clause is meant to operate in the nature of a statute of limitations and repose. *See Button v. Connecticut General Life Ins. Co.*, 847 F.2d 584, 588 (9th Cir.1988) (explaining that the purpose of the clause is " 'to annul all warranties and conditions that might defeat the right of the insured after the lapse of the stipulated time' ") (quoting 18 G. Couch, *Cyclopedia of Insurance Law* § 72:2 (2d ed.1983)). The clause is supposed to prevent the insurer from lulling the insured into a sense of security, only to litigate the issue later once the insured party is deceased. Interpreting the clause to cover Mr. Baseheart does not broaden the scope of coverage afforded the insured; it only enforces the promises of the insurer. It is troubling that Defendant's reading of the Incontestability clause essentially guts it of its meaning and purpose. It results in virtually absolute protection for the employer and very limited protection for the individual employees.

Interpreting the Incontestability clause to exclude the insureds from its protection seems to fly in the face of the history and purpose of the clause. Nonetheless, this Court is bound by the Sixth Circuit's decision in *Turner*, which the plain language of the policy seems to support. Therefore, the Plaintiff's argument regarding the Incontestability clause must fail.

V.

We will not dismiss Plaintiff's claim of equitable estoppel at this time. Often, this claim involves complex questions of fact which have not been dealt with adequately by the parties. In addition, the plaintiff's have yet to brief the law of estoppel under ERISA, since the state claim of equitable estoppel is preempted. *Cromwell v. Equicor–Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir.1991); *Davis v. Kentucky Finance Cos. Retirement Plan*, 887 F.2d 689, 696–97 (6th Cir.1989).

This Court will issue an order consistent with this memorandum opinion.

**ORDER**

The Court has before it the parties' cross-motions for summary judgment. Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment is DENIED;

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment is SUSTAINED and Plaintiff's claims are DISMISSED, except for her equitable claims.

---

6. The Plan states:
INDIVIDUAL CERTIFICATES. The Equitable will issue to the Policyholder for delivery to the insured employee a certificate which sets forth a statement of the coverage to which he or she is entitled.

The Court will set a conference in the near future to discuss scheduling the remaining matters.