JOSEPHINE R. MINNICK, Plaintiff in Error, v.
FEDERATED LIFE INSURANCE COMPANY
and Tennessee Retail Hardware Association, Inc.,
Defendant in Error.—378 S.W.(2d) 189.

Eastern Section. November 5, 1963.

Certiorari Denied by Supreme Court April 8, 1964.

Roy T. Campbell, Jr., Newport, for plaintiff in error.

Karl Saulpaw, Jr., Knoxville, for defendant in error.

MILLIGAN, Special Judge. The plaintiff instituted this suit as the alleged beneficiary of a certificate of group insurance issued to her husband, Hagan C. Minnick, now deceased, during his lifetime, as a part owner and employee of Ruble Brothers Department Store in Newport, Tennessee, which store at the time of the issuance of the certificate was a member of the Hardware Association, which Federated Life insured by its group policy. The certificate was issued effective as of December 1, 1960, and Mr. Minnick died from cancer on April 24, 1961. The defendants denied liability on the lack of eligibility of Minnick and on other grounds hereinafter referred to, and alleged that on January 25, 1960 Federated Life issued its group life policy to the defendant, Hardware Association, which contained the following provisions:

"DEFINITIONS: The term 'Employee', wherever used in this policy, shall mean an employee of a member, an employee of the policyholder, or an officer, partner or owner of a member of the Tennessee Retail Hardware Association, Inc.

\* \* \* \* \* \*

"The term 'Full Time Work', wherever used in this policy, shall mean at least 30 hours of work per week."

"*Eligibility for Insurance.* All full time employees of each member shall be eligible for insurance on the date the member becomes a participating member. If the member has six or more full time employees, the member may become a participating member, at any time, if 75% or more of the eligible employees enroll for group insurance. If the member has five or less full time employees, the member may become a partici-

pating member, if all of his employees enroll for group insurance, by either (1) the member making application to participate under this policy before April 1, 1960, (2) if a new member of the Association, by making application to become a participating member within 31 days after becoming a member of the Association or (3) at any other time, providing each full time employee presents, at his own expense, evidence of insurability satisfactory to the Company.

"All other full time employees who are employed by a participating member subsequent to the date such member became a participating member shall become eligible for insurance on the first of the month next following completion of 3 months continuous active employment with said participating member."

Ruble Brothers Department Store was a partnership consisting of Mrs. Josephine B. Ruble, Mrs. Josephine R. Minnick and Hagan C. Minnick, and employed four regular employees as defined by the policy, who worked in excess of thirty hours per week. The plaintiff did not take part in the operation of the business. Mrs. Ruble drew no salary, did not participate in the profits, but did go to the store from time to time as her health permitted, and on occasion did other work in connection with its operation, to which reference will hereinafter be made.

In May, 1960, Mr. Minnick became ill and underwent an operation for cancer at Johns Hopkins, which consisted of the removal of his right arm and shoulder area. During the year 1960 Mrs. Ruble became ill, underwent an operation for cancer, as a consequence of which she was incapacitated for a number of months, and in October, 1960 went to New York to visit her sister and to

recuperate and did not return until December 7, 1960. Effective as of December 1, 1960 Hagan C. Minnick enrolled for life insurance under the group policy in the amount of Ten Thousand Dollars ($10,000.00), the plaintiff being designated as the beneficiary, and as of the same date Mrs. Josephine B. Ruble was enrolled for life insurance under the same policy in the amount of Four Thousand Dollars ($4,000.00). Enrollment cards for the four regular employees were likewise prepared, making a total of six enrollment cards which were forwarded to the defendant, Hardware Association in order to effect life insurance coverage under the provisions of the group life policy.

No evidence of insurability of any of the enrollees was furnished.

The defendants allege at the time of the submission of enrollment cards for insurance coverage, Ruble Brothers had only four full time employees as defined by the policy, and that Mr. Minnick and Mrs. Ruble were not full time employees, which fact was known to plaintiff's deceased husband, which made them ineligible for insurance, and that by the submission of enrollment cards, fraud was committed upon the defendants to obtain life insurance without first submitting evidence of insurability satisfactory to the defendants as required by the policy; that plaintiff's husband was uninsurable by reason of his cancerous condition, and that Mrs. Ruble was ineligible for life insurance by reason of the fact that she was not a 30-hour per week employee at the time of the submission of the enrollment cards; that had the policy requirements been complied with, there being actually less than six full time employees, evidence of insurability

satisfactory to the Company would have been a prerequisite to the issuance, and had the true facts been disclosed, the policy would not have been issued on Minnick.

The points raised by the pleadings are as follows:

1. On December 1, 1960 were the employees and owners of Ruble Brothers eligible to participate in the group life plan issued by the defendant Federated to Tennessee Retail Hardware Association, Inc., without having first presented at their own expense evidence of insurability satisfactory to Federated?

2. Did plaintiff's husband, Minnick, supply materially incorrect information to the defendants so as to induce the insurance company to believe that such was true and meant to be acted upon, and did the insurance company rely upon said representations and issue a certificate to plaintiff's husband who was then afflicted with cancer and to the other enrollees without first requiring evidence of insurability?

The issues were submitted to a jury which returned a verdict in favor of plaintiff and against the defendant, Federated Life Insurance Company, in the sum of Ten Thousand Dollars ($10,000.00), and a verdict in favor of Tennessee Retail Hardware Association, Inc. The defendant Federated filed a motion for new trial, which was overruled, and has perfected its appeal.

The first three Assignments of Error are that there is no evidence to support the verdict, that the verdict is contrary to the law and that the Court erred in not directing a verdict in favor of the defendants. The remaining Assignments complain of the Court's charge, and in effect restate the errors complained of in the first three Assignments.

In order to obviate the necessity of furnishing to the Company evidence of insurability, it was necessary under the terms of the policy for there to be at least six full time employees of Ruble Brothers, 75% of whom had enrolled for life benefits. If there were five or less full time employees, evidence of insurability was required. Consequently, if it should be determined that Mrs. Ruble was not a full time employee as defined by the policy, then Minnick and the four admittedly full time employees would have been required to furnish evidence of insurability, which Minnick could not do on account of the malignant condition with which he was suffering.

To resolve this question it is necessary to consider the evidence. The plaintiff testified as to Mrs. Ruble's activities. She said that she had surgery in March of 1960 at a hospital in Newport and that following her surgery she had not kept regular hours, that she was going to Knoxville for x-ray therapy, but if anything came up that the Clerks at the store could not handle, she was consulted and if she was needed, she went to the store. That between March, 1960 and through December, 1960, she went to the store when she was able, but she could not say how often.

The defendants took Mrs. Ruble's deposition. She testified that in March, 1960 she had an operation and after that date she did not participate in the store "with any regularity", that she went as often as she could, but was on sick leave "indefinitely". That she could not tell how many hours she worked, "maybe an hour one week and ten the next, just whenever it was needed". She said she was in the hospital three times from March until Fall. When asked as to how often she was in the

store, she said, "I wasn't there very much of the time". She stated that she spent three weeks going to Knoxville for x-ray and that in September, 1960 she was in the hospital twelve days and then went to her sister's in New York to recuperate and came home on December 7, 1960 and that she did not work in the store after she came home. She estimated that she worked from five to ten hours a week after her return from New York in 1960 and that between the time she was operated on in March, 1960 and her return from New York in December, 1960, her average working time was "very little", and that she was sick all of that period of time.

"From the time I had my operation until I had the x-rays, I was sick from then and only went to the store when it was absolutely necessary."

"Q Did you work with any degree of regularity?

"A No. I sat down there and I signed checks. I didn't—we even turned the opening and closing of the store over to somebody else."

From the above testimony we find that Mrs. Ruble was not a full time employee as defined in the contract of insurance and, consequently, was not eligible to participate in the group life plan attempted to be put in effect for Ruble Brothers, and by reason of her ineligibility, the other five enrollees were likewise ineligible, evidence of insurability not having been furnished to the Company.

"Insurance contracts are subject to much the same rules of enforcement and construction which apply to contracts generally." General American Life Ins. Co. v. Armstrong, 182 Kan. 181, 185 S.W.(2d) 505.

"The rule is well settled that where there is no ambiguity [in an insurance policy], it is duty of the Court to apply to the words used their ordinary meaning, and neither party is to be favored in their construction." Bowlin v. State Farm Mutual Automobile Insurance Co., 46 Tenn.App. 260, 327 S.W.(2d) 66.

With these principles in mind, taking into consideration the testimony of Mrs. Ruble we can reach no conclusion other than that she was not eligible to enroll in the group plan, and as a consequence, none of the enrollees were eligible without evidence of insurability, which was not furnished.

In Zarzour, et al. v. Southern Life Insurance Co., 46 Tenn.App. 680, 333 S.W.(2d) 14, a somewhat similar question was involved. The beneficiaries under the certificate of life insurance issued under a group plan brought suit against the insurance company to collect thereunder. The Trial Court directed a verdict for the defendant on the ground that Richard A. Zarzour at the time of the issuance of the group policy and the certificate thereunder was more than seventy years of age, and for that reason was excluded, the policy providing that upon an enrollee attaining the age of seventy, all benefits should automatically terminate. Plaintiffs insisted that the defendant knew or should have known when the certificate was issued that the enrollee was more than seventy years of age and should be held to be estopped under the principles announced in Life & Casualty Insurance Co. v. King, 137 Tenn. 685, 195 S.W. 585. In affirming the judgment of the Trial Court in directing a verdict the Court said:

"While none of these cases involved a life policy containing an exclusion clause based upon age, we hold that the same principle would apply if the insurer knew that, because of his age, the applicant would not get any insurance.

"We can not say, however, that an insurer owes an affirmative duty to inquire whether the applicant falls within an excluded class. The applicant himself owes some duty, especially where, as in this case, the exclusion based upon age is plainly and clearly stated in the policy."

■ Plaintiff relies upon waiver and estoppel, which insistence is based upon the alleged knowledge of James Noe, a representative of the insurance company who from time to time called on Ruble Brothers when in that part of his territory, he having sold hospital insurance to Ruble Brothers and also other types of insurance, such as automobile, homeowners, etc. The record does not disclose from what source the enrollment cards were procured. Mr. Parrish, Secretary-Treasurer of the Hardware Association, was asked if the enrollment cards were sent in by Mr. Noe or by Mr. Minnick. He stated that they had no way of knowing who sent them, that the name of J. C. Noe was typed on these cards by one of the insurance clerks. The cards were sent to the Hardware Association and not the insurance company, and Noe was not an employee of the Hardware Association. Parrish testified that the premiums on the enrollments for life insurance had been returned. There is no evidence that Noe had any knowledge of the enrollment for insurance by Mr. Minnick, Mrs. Ruble and the four employees, and there is no evidence that he made any representations of any kind in reference thereto; how-

ever, the question of waiver cannot be relied upon by the plaintiff. The defendant set forth its defenses in great detail, and the plaintiff did not file any replication to these pleas raising the question of waiver, but simply joined issue. A similar situation is discussed in the case of Karney v. Reliance Life Insurance Co., 9 Tenn.App. 456. There the Court said:

"No suggestion that any conduct of the insurance company had operated as a waiver of any forfeiture clause. The pleas filed by the defendant specifically set out the contention of the defendant with reference to the term of extended insurance to which the insured was entitled under the provision of the policy. The plaintiff did not file any replication to these pleas raising the question of a waiver of the forfeiture clause because of the failure to give notice. We are therefore of the opinion that the learned Trial Judge properly held that under the pleadings the question of a waiver of the forfeiture clause was not made an issue."

We do not deem it necessary, however, to rely upon the lack of pleadings raising the question of waiver for the reason that the record fails to disclose any evidence on which to base such a defense.

It is clearly established by the record that at the time plaintiff's husband and Mrs. Ruble, his mother-in-law, were enrolled in the group life plan, both of them were suffering from cancer. Mr. Minnick had had his arm and shoulder removed in an effort to relieve his condition, and Mrs. Ruble had been in the hospital for treatment on at least two occasions during the preceding year. With their respective conditions of health being well known to plaintiff's husband, the enrollment cards were

prepared and submitted to the Company, under the circumstances hereinbefore set forth.

In view of the foregoing, we find that there was supplied to the insurance company materially incorrect information so as to induce it to believe that such was true and meant to be acted upon, and the insurance company relying upon said representations, issued a certificate to plaintiff's husband who was then afflicted with cancer, and to the other enrollees without first requiring evidence of insurability.

We have given careful consideration to the entire record in this action and have been unable to find therein any material evidence which, together with all reasonable inferences favorable to the plaintiff which may be drawn therefrom, reasonably tends to support the cause of action as stated in the plaintiff's declaration and as shown by the proof. Having reached this conclusion, we are of the opinion that the able Trial Judge erred in not directing a verdict in favor of the defendants in accordance with defendants' motion therefor.

It results that defendants' Assignments of Error Nos. 1, 2 and 3 are sustained. In view of this action we do not deem it necessary to pass upon the remaining Assignments of Error, most of which complain of the charge.

The case will stand dismissed as on directed verdict. The costs will be taxed accordingly to the plaintiff.

McAmis, P.J., and Cooper, J., concur.