(638 P.2d 352)

No. 52,480

Estate of Clifford E. Bingham, Deceased, Alta L. Bingham and William H. Bingham, Jr., *Plaintiffs and Appellees,* v. Nationwide Life Insurance Company of Columbus, Ohio, *Defendant and Appellant.*

Opinion filed December 17, 1981.

*Lee M. Smithyman,* of Weeks, Thomas & Lysaught, Chartered, of Kansas City, Kansas, for appellant.

*Patrick D. McAnany,* of McAnany, Van Cleave & Phillips, P.A., of Prairie Village, for the appellees.

Before Foth, C.J., presiding, Terry L. Bullock, District Judge, and Frederick Woleslagel, District Judge Retired, assigned.

Woleslagel, J.: Defendant Nationwide Life Insurance Company appeals from a grant of summary judgment to the plaintiffs-appellees on their claim for death benefits under a group life insurance contract paid for by Clifford E. Bingham's employer. Plaintiffs, the Binghams, are the named beneficiaries under the policy. Nationwide also appeals from the allowance of attorney fees pursuant to K.S.A. 40-256 upon a finding that it had "refused without just cause or excuse to pay the full amount" of benefits provided by the policy.

The estate of Clifford E. Bingham originally was one of the plaintiffs, but the final order entered by the trial court held it was not an entity entitled to any benefits as the only beneficiaries designated by the decedent are the two individual plaintiffs. It is therefore not a party to this appeal.

We affirm the trial court both as to its finding regarding benefits and as to its allowance of attorney fees to the Binghams' attorneys.

The issues, as stated by Nationwide, are:

1. "At the time of his death, was Mr. Bingham eligible for coverage under the Nationwide group life and health insurance policy?" (This issue turns on whether he was "regularly employed" at the time the policy went into effect.)

2. "Did Mr. Bingham's representation of health and eligibility void any claim of Nationwide insurance coverage which he might have otherwise had?"

3. "In its decision to award attorney fees, did the trial court err in finding that Nationwide denied benefits 'without just cause or excuse' pursuant to K.S.A. 40-256?"

We note first that in passing on the validity of a summary judgment, the record must be read in the light most favorable to the party who resisted the motion. *Collier v. Operating Engineers Local Union No. 101,* 228 Kan. 52, Syl. ¶ 2, 612 P.2d 150 (1980). While our determination must give due regard for the principle just stated, the controlling facts are based on pleadings, depositions, and other written evidence. This results in our being afforded the same opportunity as the trial court to consider the evidence and determine what the facts establish. *J & W Equipment, Inc. v. Weingartner,* 5 Kan. App. 2d 466, Syl. ¶ 2, 618 P.2d 862 (1980); *Clark Equip. Co. v. Hartford Accident & Indemnity Co.,* 227 Kan. 489, 491, 608 P.2d 903 (1980).

There is one final approach required of us in looking at one of the parts of the record in this case. Nationwide seeks to ameliorate the possible significance of a letter written by one of its claims managers by claiming it was written pursuant to settlement negotiations. This is disputed by the Binghams. We cannot consider the bare assertions of either counsel. Rather, we observe that while Supreme Court Rule 3.02 (228 Kan. xl) requires the clerk of the district court to compile the basic record on appeal, if Nationwide had anything of record to support its position in this regard, it would be additional to the items that the clerk is directed to include as enumerated in Rule 3.02. Under this circumstance, it would appear that it was incumbent on Nationwide to designate sufficient record to support its claim. This is so if a claim of error is being made, *Farmers Ins. Exchange v. Schropp,* 222 Kan. 612, Syl. ¶ 8, 567 P.2d 1359 (1977); *Frevele v. McAloon,* 222 Kan. 295, 299, 564 P.2d 508 (1977). It would seem to follow that the same obligation would fall on one seeking to

support a favorable contention as would fall on one seeking to support a claim of error. We will therefore consider the letter for what it appears to us to show upon its face. That will be discussed in the final part of this opinion which deals with the question of allowance of attorney fees.

## Undisputed Facts

Clifford E. Bingham died of cardiac arrest on November 16, 1977. He had worked for Merriam Motors continuously since 1964, serving as its business manager since about 1966. John M. Garlich was president of the company, and he, with a St. Louis, Missouri, partner, owned a number of car dealerships.

It had been Mr. Garlich's practice to arrange for group health and life insurance on employees of the dealerships and he sometimes changed insurance companies if comparative terms favored a change when a policy was about to expire. A policy with Capital Life was to expire on November 1, 1977. Through the efforts of an insurance broker, he had arranged for that policy to be replaced with a policy providing the same coverages and sold by Nationwide. This transaction was completed in early October, 1977. Mr. Garlich understood the new policy would continue the coverage that had been provided by Capital Life with four classifications of certificate holders: one for presidents and managers, one for salesmen and service advisers, with the last two classifications based solely on amount of annual earnings. The policy did provide those classifications, and the first classification specified $40,000 of life insurance for presidents and managers. The premium was nonparticipating as to individuals covered, and on October 26 the company paid the Nationwide premium. It was Mr. Garlich's understanding that the new policy would automatically cover all employees on November 1 and that no one would have to furnish proof of insurability.

Mr. Bingham had had a heart attack on August 24, 1977, and was in a hospital until September 27. He then recuperated at home until about October 26. Throughout this two-month period Mr. Garlich expected him to give advice and information through phone calls and personal visits with another employee, who did the balance of the managerial work at the company office. Mr. Garlich's expectations as to this handling of the managerial business were carried out by these two employees.

About October 26 Mr. Bingham started spending a part of his

days at the office and was spending full days there no later than November 7. During all this period, and until his death nine days later, Mr. Garlich considered Bingham to be on the job and paid him full salary as a regular employee occupying the position of manager.

While the insurance broker knew about Mr. Bingham's heart attack and absence from the office, there is nothing in the record to indicate this was passed on to Nationwide by anyone. The record does not indicate for which party he was agent, and we make no supposition in this regard. Nationwide had a practice of having certificate holders sign group enrollment cards and they were delivered to Merriam Motors on October 19. An employee filled out and signed the one for Mr. Bingham. No claim of either benefit or prejudice is made by either party as to the handling of this card.

Nationwide had an additional practice of having employees designated "Class A," those insured for $40,000.00 or more, sign "Supplemental Enrollment Cards." The St. Louis representative of Nationwide who submitted the bid for this policy overlooked getting these cards signed by November 1. On November 7 he drove to Merriam Motors with the intent of getting them signed. Of this class, only Mr. Bingham was in the office that day and he signed it. Nationwide contends it contained significant misrepresentation and the language of it will appear in the part of this opinion under the heading Policy Provisions and Supplemental Enrollment Card.

Nationwide's first claim of either irregularity or limitation as to Mr. Bingham's coverage was made on November 18, two days after his death. On January 6, 1978, Mr. Garlich submitted Nationwide's form for proof of death. On March 24, 1978, a claims manager for Nationwide forwarded to Mr. Garlich its draft for $15,000.00 payable to Mr. Bingham's estate. The draft was never negotiated for payment. The letter mentioned earlier accompanied this draft.

### Policy Provisions and Supplemental Enrollment Card.

The material provisions of Nationwide's policy are:

" 'Insured Person', with respect to each benefit provision hereunder, means either a Certificateholder or a Dependent for whom the Schedule of Benefits indicates that coverage under that benefit provision is provided, but only during the period he is insured thereunder as determined under all other applicable provisions of the Policy.

. . . .

" 'Regularly Employed' means continuously employed by the Policyholder for at least 30 hours each week.

. . . .

"The effective date of insurance for an eligible person will be the first of the policy month coinciding with or next following the date he becomes an eligible person. "If an eligible person is not actively at work on the date his insurance would otherwise become effective, his insurance will not become effective until the date he returns to active work.

. . . .

"INCONTESTABILITY. . . . No statement made by a Certificateholder relating to his insurability will be used in any contest unless (a) it is contained in a written application signed by him, and (b) a copy of the application has been furnished to him or to his beneficiary.

. . . .

"ENTIRE CONTRACT - CHANGES. The Policy and the application of the Policyholder, a copy of which is attached hereto, together with the Certificateholder's applications, if any, submitted in connection herewith, constitute the entire contract between the parties, and any statements made by the Policyholder or by any Certificateholder will, in the absence of fraud, be deemed representations and not warranties. No such statement will avoid the insurance or reduce benefits under the Policy or be used in defense of a claim hereunder unless it is contained in a written application and a copy of such application is or has been furnished to the person or to his Beneficiary, if any."

Because of the claims made by Nationwide as to the significance of the Supplemental Enrollment Card, it is set forth in full:

"I UNDERSTAND THAT IN ORDER TO BECOME INSURED FOR THE GROUP LIFE INSURANCE FOR WHICH I AM ELIGIBLE IN ACCORDANCE WITH THE TERMS OF THE GROUP POLICY ISSUED OR TO BE ISSUED BY THE NATIONWIDE LIFE INSURANCE COMPANY, I MUST MAKE WRITTEN ELECTION THEREFOR AND MUST SATISFY THE CONDITIONS IN THE FOLLOWING STATEMENT:

'I am on the date this statement is signed, actively at work for my employer on a full-time basis and physically able to perform all the duties of my occupation. I regularly work at least the number of hours in my employer's normal work week, but not less than 30 hours per week, at the employer's business establishment or other locations to which the employer's business requires me to travel. During the past four weeks I have not been absent from work on account of my own sickness or injury.'

"I HEREBY MAKE ELECTION FOR THIS INSURANCE AND CERTIFY THAT THE FOREGOING CONDITIONS ARE TRUE AS TO ME."

## Kansas Statutes Applicable

### K.S.A. 40-434 provides in part:

"No policy of group life insurance shall be delivered in this state unless it contains in substance the following provisions, or provisions which in the

opinion of the commissioner are more favorable to the persons insured, or at least as favorable to the persons insured and more favorable to the policyholder . . . .

. . . .

"(4) A provision setting forth the conditions, if any, under which the insurer reserves the right to require a person eligible for insurance to furnish evidence of individual insurability satisfactory to the insurer as a condition to part or all of his coverage."

### K.S.A. 40-256 in part provides:

"That in all actions hereafter commenced, in which judgment is rendered against any insurance company . . . if it appear from the evidence that such company . . . has refused without just cause or excuse to pay the full amount of such loss, the court in rendering such judgment shall allow the plaintiff a reasonable sum as an attorney's fee for services in such action, including proceedings upon appeal, to be recovered and collected as a part of the costs: *Provided, however,* That when a tender is made by such insurance company, society or exchange before the commencement of the action in which judgment is rendered and the amount recovered is not in excess of such tender no such costs shall be allowed."

### Coverage Was Provided For Mr. Bingham

Nationwide contends that its policy only covered employees who worked thirty hours each week in the month before November 1 and that this excluded coverage for Mr. Bingham. As a general rule, construction and effect of a contract of insurance is a matter of law to be determined by the court. *Anderson v. Nationwide Life Ins. Co.,* 6 Kan. App. 2d 163, 165, 627 P.2d 344, *rev. denied* 229 Kan. 669 (1981), following *Scott v. Keever,* 212 Kan. 719, 512 P.2d 346 (1973). What an insurance company intends or may think its language means is not the test. *Anderson* at 166. Rather, the intent of the policy is to be determined by considering language of the whole instrument, taking into account the situation of the parties, the nature of the subject matter, and the purpose to be accomplished. *Mah v. United States Fire Ins. Co.,* 218 Kan. 583, 545 P.2d 366 (1976). The purpose of this policy was to carry forward the same coverage that Capital Life had furnished. That included coverage on Mr. Bingham's life.

Neither is the language of a policy to be given a strained interpretation. Instead, the test is what a reasonable person in the position of the insured would have understood the language to mean. *Casey v. Aetna Casualty & Surety Co.,* 205 Kan. 495, Syl. ¶ 4, 470 P.2d 821 (1970). We find nothing in the policy to suggest to any reasonable person that this policy would not do what was

intended: to carry forward the coverage Capital Life had provided. As stated in 13 Appleman, Insurance Law & Practice § 7426, p. 384: "Forfeitures of life insurance contracts are not favored, and should only be permitted when expressed in clear and unmistakable terms." See also *Polan, an Infant, v. Travelers Ins. Co.,* 156 W.Va. 250, 192 S.E.2d 481 (1972).

While diligent counsel for each side have cited many cases to us, we have been unable to find any Kansas cases interpreting language similar to the Nationwide policy. The cases from other jurisdictions relied upon by Nationwide are not in point since they concern either employees who were not paid while away from their usual work station, or the policy provisions in those cases contained clear and broad exclusionary language. See *First Pa. B. and T. Co. v. United States Life Ins. Co., City of N. Y.,* 421 F.2d 959 (3rd Cir. 1969) (policy excluded persons who "do not work at least thirty hours per week," and plaintiff conceded its decedent's work was "irregular"); *White v. Massachusetts Mutual Life Insurance Co.,* 275 Ala. 581, 157 So. 2d 6 (1963) (doctor was not "actively at work . . . full time" when his records failed to show any services or charges and he was not paid by his firm); *Kolligian v. Prudential Ins. Co.,* 353 Mass. 322, 231 N.E.2d 381 (1967) (policy excluded those "absent from work due to illness or injury"); *Minnick v. Federated Life Ins. Co.,* 53 Tenn. App. 1, 378 S.W.2d 189 (1963) (employee drew no salary and went to store occasionally as her health would permit); *Rabinovitz v. Travelers Insurance Co.,* 11 Wis. 2d 545, 105 N.W.2d 807 (1960) (included employee must work "at his customary place of employment").

Neither has our search of cases from other jurisdictions led us to any one case so nearly in point that it might be termed a "bay horse case." Taken together, however, the cases do cover the issues included here. As stated in 1 Appleman, Insurance Law & Practice § 44 n. 13.15, p. 75 (1980 Supp.), "[A]ctive and full time employment must be judged with reference to duties of services of particular employee in question and relations and transactions between employer and employee and it is not essential to full time employment that such employee be regularly and continuously at a particular place such as the employer's office." See also *Roby v. Connecticut General Life Ins. Co.,* 166 Conn. 395, 349 A.2d 838 (1974), which involved a claim arising when a tenured and full-time compensated teacher was on vacation.

To like effect is *Augusta v. John Hancock Ins. Co.,* 11 Misc. 2d
111, 170 N.Y.S.2d 908 (1958), which held that an employee,
though in a hospital, was actively 'at work if he actively made
decisions and gave directions and instruction relative to the
business. This is precisely what Mr. Bingham did while in the
hospital and at home.

As stated in *Morris v. Mutual Benefit Life Ins. Co.,* 258 F.
Supp. 186 (N.D. Ga. 1966), a provision that an employee, to be
covered, must work a 30-hour week, must be interpreted to relate
to what time he put in, as an average, not what time he put in on
any particular week. There, the policy provided coverage to
"Each active, full-time employee, except any such person em-
ployed on a temporary basis" and "For the purposes of this
policy, any person who works less than 30 hours per week shall
not be considered a full-time employee." Nationwide states part
of the reason for its similarly restrictive language was to disqual-
ify part-time employees; we conclude that was the only purpose.

*Great-West Life Assurance Company v. Levy,* 382 F.2d 357
(10th Cir. 1967), also a group policy case, was jury tried. The jury
was instructed that the burden was on the insurer to void such a
policy and it had the burden of proving the deceased was not an
employee. It was also instructed that it was not necessary that "an
employee be regularly and continuously at a particular place,
such as the employee's office." These instructions were approved
on appeal.

To like effect is the case of *Williams v. Metropolitan Life Ins.
Co.,* 448 S.W.2d 295 (Mo. App. 1969), where an employee was
considered "actively at work" on the date of eligibility for cover-
age if he was at the usual place of employment or otherwise
working at his employment under the direction and supervision
of his superiors.

We conclude Mr. Bingham was an eligible, full-time employee
working thirty hours a week as the Nationwide policy must be
interpreted, and he was a covered employee as of November 1,
1977 under Nationwide's policy.

Nationwide contends the Supplemental Enrollment Card
signed by Mr. Bingham voided the policy as to him because of
fraudulent misrepresentation. This requires little comment. The
Supplemental Enrollment Card was not a warranty under the

policy; it was not effective unless a copy was delivered to Mr. Bingham or his beneficiary. The record does not show this was done. Also, his insurance was already effective seven days before this card was presented to him. Finally, the taking of the card violated the spirit, if not the precise provision, of K.S.A. 40-434, as the policy contained no conditions setting forth a reservation of the right to require such cards. The Kansas statute is consistent with the distinctive character of group employee insurance in that "the individual employees are not required to submit applications individually." *Prudential Ins. Co. of America v. Jenkins,* 290 Ky. 802, 806, 162 S.W.2d 791 (1942); *United States v. Markowitz Bros. (Delaware), Inc.,* 383 F.2d 595 (9th Cir. 1967).

### Attorney Fees Are Warranted

Whether or not attorney fees should be awarded under K.S.A. 40-256 is a judgment matter, and accordingly the determination may often be one very hard to make. In this case, it is not difficult. In spite of the diligent efforts of capable counsel, Nationwide is not able to support what we find was a strained position it took as to how it interpreted the policy it wrote, and which eventually caused its counsel to take a similar position. The authorities we have cited lead us to conclude that Nationwide was never in possession of any facts or inferences that would come close to meeting its burden of proving its policy did not cover Mr. Bingham.

The tests are reviewed in *Clark Equip. Co.,* 227 Kan. at 493-94, *Anderson v. Nationwide Life Ins. Co.,* 6 Kan. App. 2d at 169-70, and in *Brown v. Combined Ins. Co. of America,* 226 Kan. 223, 226-27, 597 P.2d 1080 (1979). From these cases, and cases cited therein, we hold that the burden of showing entitlement here lies with the Binghams. Also, we recognize that, taking these facts and this policy, the case is one of first impression in Kansas. This brings into play the directive that this factor is one that may justify, or help justify, an insurance company's refusal to pay. *Hand v. State Farm Mut. Auto. Ins. Co.,* 2 Kan. App. 2d 253, 261, 577 P.2d 1202, *rev. denied* 225 Kan. 844 (1978).

In this case, however, the lack of substantial defense to the Bingham claim is colored significantly by the letter referred to earlier. The Binghams suggest the letter worked a waiver of liability or an estoppel to deny liability on the part of Nationwide. We did not reach that contention as, under our view, a determi-

nation of the case in favor of the Binghams was mandated on more substantial grounds. We do, nevertheless, consider the letter material in deciding if attorney fees should be awarded to the Binghams. The letter was sent to Mr. Garlich on March 24, 1978, and was written by a "Special Claims Manager." This is the body of the letter:

"Dear Mr. Garlich:

We are pleased to enclose our draft in the amount of $15,000 representing the Life Insurance Benefits applicable under your Group Insurance Policy GE-6715-L for Clifford E. Bingham.

The benefits under this case were made payable to Mr. Bingham's Estate since he did not complete and sign the Nationwide Insurance Company's enrollment card designating a beneficiary. Further, the maximum Life Insurance Benefits applicable under your Group Insurance Policy for Mr. Bingham is $15,000, base amount of Life Insurance Benefits since he was absent from work on account of his sickness within the four week period prior to the effective date of his insurance under your policy.

We hope that this explains our handling of this claim, however, if you should have any questions, please let us know.

Very truly yours,
/s/
Ralph H. George
Special Claims Manager"

Mr. Bingham was a Class A ($40,000.00) insured or he was not insured at all. Nationwide attempts to justify one of its positions by stating the language of its policy was to exclude part-time employees. If the letter was an attempt to create that class of employees, it was contrary to an admitted principle of the policy. We stated earlier that we are required to interpret the letter on its face. On its face it appears to be an attempt to buy a $40,000.00 liability for $15,000.00.

Affirmed, but remanded to the trial court to allow an additional reasonable fee for this appeal.