NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0417n.06

Nos. 10-5154; 5155

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

PAUL MCKAY,

     Plaintiff-Appellant Cross-Appellee,

v.

RELIANCE STANDARD LIFE
INSURANCE COMPANY,

     Defendant-Appellee Cross-Appellant,

UNUMPROVIDENT CORPORATION;
UNUM LIFE INSURANCE COMPANY
OF AMERICA,

     Defendants-Appellees.

_____/

<table>
<tr><td>

**FILED**

*Jun 27, 2011*

LEONARD GREEN, Clerk

</td></tr>
</table>

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF TENNESSEE

BEFORE: SUHRHEINRICH, MOORE and COOK; Circuit Judges.

     **SUHRHEINRICH, Circuit Judge**. Suffering from severe cervical and lumbar disc disease, Plaintiff-Appellant Paul McKay ("McKay") sought Long Term Disability ("LTD") benefits. He filed consecutive claims with Defendants-Appellees, Unumprovident Corporation and Unum Life Insurance Company ("Unum"), and Defendant-Appellee, Reliance Standard Life Insurance Company ("Reliance"). Both denied his claims. The question on appeal is whether Unum and Reliance acted arbitrarily or capriciously in denying McKay LTD benefits. The district court held that neither decision was arbitrary or capricious. For the following reasons, we **AFFIRM**.

1

In addition, Reliance cross-appealed, alleging that the district court abused its discretion by awarding McKay attorney fees following a remand of his claim against Reliance. For the reasons stated, we **AFFIRM** the district court's award of attorney fees.

## I. BACKGROUND

U.S. Xpress Enterprises, Inc. ("U.S. Xpress") employed Paul McKay as legal counsel from September 1999 until January 19, 2004, when it terminated him. During his employment, McKay developed significant cervical spine problems. He underwent surgery in June 2003. Unfortunately, the surgery did not permanently resolve McKay's condition. McKay attempted to work from September through December 2003, but his pain worsened, and his work was increasingly affected. He was frequently absent from work and his medication made mental concentration more difficult. In mid-December 2003, McKay also came down with influenza. Although McKay states that the last day he attempted to work at the office was December 19, McKay did go to the office on December 31. Thereafter, he did not return to the office.

In January 2004, after his flu improved, he wanted to return to the office, but could not go back because his "back pain and neck pain had become so bad." Though McKay intended to work from home, it is unclear whether he actually worked from January 1, 2004, until January 19, 2004, when U.S. Xpress terminated him.[1]

U.S. XPress provides LTD benefits to its employees. Prior to January 1, 2004, these benefits were provided by Unum. On January 1, 2004, Reliance replaced Unum as the benefit provider. Reliance provided two policies to U.S. Xpress: a "basic" policy, which required an employee to elect coverage and pay his own premiums, and an "executive" policy, under which no election was

---

[1]McKay received full pay through January 16, 2004.

2

necessary and U.S. XPress paid the premiums.[2]  Both policies include a Transfer Of Insurance Coverage section which provides coverage to certain, previously covered employees.

On June 15, 2005, McKay submitted a LTD claim to Unum.  Unum replied with a letter, dated October 13, 2005, denying McKay benefits.  Unum explained that McKay had not sustained the 20% reduction in indexed monthly earnings required for eligibility under its policy, because he continued to receive full compensation from U.S. Xpress through January 16, 2004.  McKay pursued an administrative appeal through Unum and its claims administrator again denied benefits.  The denial letter emphasized that Unum was not disputing McKay's claimed medical concerns, but that, per the terms of the policy, more was required before he was eligible for LTD benefits.  Specifically, he had not experienced the specified 20% or more financial loss.

In August 2005, McKay filed for social security benefits.  The Social Security Administration found him "disabled" as of December 17, 2003 and awarded him disability.

In March 2006, McKay filed a LTD claim with Reliance.  Reliance considered McKay's claim under the basic policy and denied him coverage on the basis that he had not paid premiums or elected coverage.  McKay pursued an administrative appeal through Reliance.

In December 2006, McKay filed a complaint in federal court against Unum and Reliance alleging a denial of LTD benefits in violation of § 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132.

In September 2007, the district court concluded that Unum had not unreasonably denied McKay relief.  The court determined that McKay did not qualify for LTD benefits under Unum's

_____

[2]These descriptions, adopted from the district court memorandum, are used for convenience, and not to define the policies.

policy because he had not sustained a loss in earnings while Unum's policy was in effect. On the other hand, the court remanded the case against Reliance because it improperly denied McKay coverage when it failed to clarify with U.S. Xpress which coverage provisions applied to McKay, amounting to a failure to investigate that was unreasonable and arbitrary.

In October 2007, McKay filed a motion seeking attorney fees from Reliance pursuant to 29 U.S.C. § 1132(g)(1). A magistrate judge issued a Report and Recommendation ("R&R") and recommended an award. Although the district court considered Reliance's opposition to the magistrate's conclusions, the court accepted and adopted the R&R.

In June 2008, Reliance again denied McKay benefits under its policy. After reviewing McKay's claim under the executive policy, Reliance determined that he was not "Actively at Work" pursuant to the policy and, additionally, his claimed date of disability predated the Reliance policy's effective date. In response to McKay's motion to reopen the case, the district court reinstated his case against Reliance.

In July 2009, Reliance moved for judgment on the administrative record. McKay followed with a similar motion. The district court concluded that Reliance's determinations, specifically that McKay was not "Actively at Work" and that his disability predated the policy, were rational and supported by the record. Accordingly, it upheld Reliance's decision to deny McKay benefits.

This appeal followed.[3]

## II. ANALYSIS

### A. Standards of Review

_____

[3]Not until the district court issued a final decision with respect to McKay's claims against both Unum and Reliance was an appeal appropriate pursuant to 28 U.S.C. § 1291.

Judicial review of an ERISA benefit denial is based solely on the administrative record available to the benefit plan administrator at the time of the decision. *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609, 619 (6th Cir. 1998). The review is *de novo* unless the plan administrator has "discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). When the administrator acts with discretion, the reviewing court applies the highly deferential arbitrary or capricious standard of review. *Haus v. Bechtel Jacobs Co.*, 491 F.3d 557, 561 (6th Cir. 2007). It is undisputed that the Unum and Reliance policies required discretionary decision making, so we must apply the arbitrary or capricious standard.

This standard "is the least demanding form of judicial review of administrative actions"; thus, "[w]hen it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Killian v. Healthsource Provident Adm'rs, Inc.*, 152 F.3d 514, 520 (6th Cir. 1998) (quoting *Perry v. United Food & Commercial Workers Dist. Unions 405 & 442*, 64 F.3d 238, 241 (6th Cir. 1995) (internal quotation marks omitted)). The decision must "be upheld if it is the result of a deliberate principled reasoning process, and if it is supported by substantial evidence." *Id*. (quoting *Baker v. United Mine Workers of Am. Health & Retirement Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991)). In other words, if the decision is rational in light of the policy's provisions, the decision should stand. *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 381 (6th Cir. 1996) (citations and quotation marks omitted); *see also Conkright v. Frommert*, – U.S. —, 130 S.Ct. 1640, 1646 (2010) (explaining that a plan's interpretation will not be disturbed if reasonable). This is true, even if the plaintiff offers an equally rational interpretation.

*Morgan v. SKF USA, Inc.*, 385 F.3d 989, 992 (6th Cir. 2004) (citing *Ross v. Pension Plan for Hourly Employees of SKF Indus., Inc.*, 847 F.2d 329, 334 (6th Cir. 1988)).

Nevertheless, despite the deferential nature of the review, the inquiry "is not a rubber stamp of the administrator's decision." *Kovach v. Zurich Am. Ins. Co.*, 587 F.3d 323, 328 (6th Cir. 2010) (internal citations and quotation marks omitted); *see also McDonald v. W.-S. Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003) (describing this review as "not . . . without some teeth") (internal citations omitted). In addition, if the benefit provider is both the decision-maker and the payor of the claims, as both Unum and Reliance are, the reviewing court should take into account a potential conflict of interest. *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 292-93 (6th Cir. 2005).

**B. LTD Claims**

McKay argues that because U.S. Xpress maintained uninterrupted LTD insurance coverage during the time period in which he sustained his disability, he must be covered by one of the two policies. McKay's argument, while somewhat logical, is incorrect. Whether he is covered by either Unum or Reliance, or both, turns on the terms of each policy. As the district court aptly pointed out: "[McKay] misses the point. The real issue is whether either the Unum or the Reliance policy, whichever one is determined to have been in effect at the time of Plaintiff's disability, actually covers [his] claims."

**1. Unum**

McKay maintains he is eligible for LTD benefits from Unum. He claims that because he was unable to work in January 2004, his salary did not amount to earnings and as a result, he suffered the loss required under the Unum policy.

Our analysis begins with the policy language. As stated *supra*, the Unum policy defines Long

Term Disability as follows:

> You are disabled when Unum determines that:
>     -you are limited from performing the material and substantial duties
>     of your regular occupation due to your sickness or injury; and
>
>     -you have a 20% or more loss in your indexed monthly earnings due to the same
>     sickness or injury.

The policy defines several of the incorporated terms. "Indexed monthly earnings" is defined as the

employee's "monthly earnings adjusted on each anniversary of benefit payments by the lesser of 10%

or the current annual percentage increase in the Consumer Price Index." The policy also defines

"monthly earnings" as "your gross monthly income from your Employer as defined in the plan."

Income is not defined explicitly in the plan and so this court may look to its ordinary meaning. *See*

*Kovach*, 587 F.3d at 332 (explaining that ERISA plan language should be interpreted in such a way

that adheres "to the plain meaning of its language as it would be construed by an ordinary person").

Income is "the money or other gain received, esp. in a given period, by an individual, corporation,

etc. For labor or services or from property, investments, operations, etc." Webster's New World

Dictionary, Third College Edition 683 (1988). The legal definition is similar: "[t]he money or other

form of payment that one receives, usu. periodically, from employment, business, investments,

royalties, gifts, and the like." Black's Law Dictionary (9th ed. 2009).

Unum's review of McKay's benefit claim determined that U.S. Xpress continued to pay

McKay his full salary until January 16, 2004:

> [U.S. Xpress] confirmed verbally and with payroll documentation that [McKay]
> continued to be paid full regular salary through the month of December 2003 and
> through January 16, 2004. We confirmed that this pay was not sick pay or salary

7

continuation but rather it was regular salary for services within the scope of [McKay's] occupation.

McKay does not dispute that he received his full salary into January of 2004. Consequently, his income, and, thus, his monthly earnings as defined by the Unum policy, did not decrease at all, much less decrease by the requisite 20% or more. McKay does not meet the financial prong of Unum's disability coverage. Unum's conclusion is reasonable based on the record, and, therefore, its decision to deny McKay LTD benefits was not arbitrary or capricious.

McKay frames his eligibility as turning on whether he actually earned his salary. In support of this position, McKay relies heavily on *Hansen v. Metro. Life Ins. Co.*, 192 F. App'x 319 (6th Cir. 2006). In *Hansen*, this court considered a plan that allowed for disability benefits when a claimant was "unable to earn more than 80% of [her] Predisability Earning . . . at [her] Own Occupation for any employer in [the] Local Economy." *Id*. at 321. Thus, the question before the court was:

> whether MetLife acted arbitrarily and capriciously in concluding that Hansen 'earn[ed]' her salary during this period, as the plan required, [] rather than receiving payment for some other reason, such as vacation or sick-leave pay, or mere charity.

*Id*. The court found that there was considerable evidence that the claimant was working full-time up until the point of her termination: her employer confirmed she was working, she informed her physical therapist she was working full-time, and records indicated she "logged in over forty hours per week, for the eight weeks she worked at home, including the days immediately preceding the termination." *Id*. at 321-22 (internal citations and quotation marks omitted). The court concluded that the benefit provider's denial of disability coverage was reasonable, because the claimant continued to earn 100% of her salary. *Id*. at 323.

8

McKay argues that the *Hansen* court's focus on the claimant's ability to work and earn his or her salary controls here. He then contrasts his own circumstances with the *Hansen* claimant, arguing that because he was not accomplishing much during December and January he cannot be found to have been earning his salary. McKay's argument is misplaced. Eligibility depends on the language of the policy. *See id*. at 323 ("In ERISA cases, 'disability' is not a term of art but one that varies from plan to plan." (citing *Calvert*, 409 F.3d at 294 n.4)). Unum's policy clearly does not turn on whether McKay earned his salary, but on whether he sustained a loss.[4] The administrative record indicates he did not.[5] Unum's decision to deny him benefits was rational based on this record. Because this decision is not arbitrary or capricious, we must uphold it.

**2. Reliance**

McKay asserts that because Unum denied him coverage, he must fall within the provisions of the Reliance policy. He also argues that he satisfies the policy terms, which require that he be "Actively at Work" or that his "Total Disability" began after the effective date of the policy.

Reliance's policy includes a Transfer Of Insurance Coverage provision, which allows employees to avoid the standard 60-day waiting period for coverage. It provides:

> If an employee was covered under any group long term disability insurance plan maintained by [U.S. XPress] prior to this Policy's Effective Date, that employee will be insured under this Policy, provided that he/she is Actively At Work and meets all of the requirements for being an Eligible Person under this Policy on its Effective Date.

---

[4]Even if Unum's policy turned on whether McKay earned his salary, McKay admitted in a reply brief below, dated August 8, 2007, to earning his pay for December 31, 2003, the final day of Unum's policy. Accordingly, January 1, 2004, would be the first day McKay did not earn his salary and Unum was no longer the benefit provider.

[5]McKay's other case citations similarly fail to support an argument that he sustained the loss specified in the Unum policy.

9

If an employee was covered under the prior group long term disability insurance plan maintained by you prior to this Policy's Effective Date, but was not Actively at Work due to Injury or Sickness on the Effective Date of this Policy and would otherwise qualify as an Eligible Person, coverage will be allowed under the following conditions:

> (1) The employee must have been insured with the
> prior carrier on the date of the transfer; and
> (2) Premiums must be paid; and
> (3) Total Disability must begin on or after this
> Policy's Effective Date.

The policy defines "Actively at Work" as:

> actually performing on a Full-time basis the material duties pertaining to his/her job in the place where and the manner in which the job is normally performed. This includes approved time off such as vacation, jury duty and funeral leave, but does not include time off as a result of an Injury or Sickness.

"Full-time" is "working for [U.S. XPress] for a minimum of 33 hours during a person's regular work week." "Total Disability" means "that as a result of an Injury or Sickness . . . an Insured cannot perform the material duties of his/her regular occupation."

### a. Actively At Work

Reliance's post-remand, administrative review concluded that McKay was not Actively at Work within the meaning of its policy.[6] Reliance looked to McKay's own sworn statement, in which he explained that:

> As best I can recall, the last day I went into the office to try to work was on about Friday, December 19, 2003. About that time I came down with the flu, and did not go back to work after that. I may have stopped by the office on December 30 or 31, but am not sure about that.

---

[6]Upon remand, Reliance's administrative record incorporated the Unum administrative record.

Reliance concluded that this "firmly establishes that [McKay] could not have been 'Actively at Work' as defined by the policy on January 1, 2004." Specifically, the statement served as a basis for Reliance to conclude that McKay was not performing his "job in the place where and the manner in which the job is normally performed." Additionally, to the extent that he was not working on account of influenza, Reliance pointed out that this would not excuse his failure to meet the Actively at Work requirement. Finally, Reliance determined that "merely stopping by the office a day or two before [Reliance's] policy effective date hardly constitutes a regular pattern of working 'a minimum of thirty-three hours per week.'" Reliance noted further that the fact that U.S. XPress continued to pay McKay his salary even though he was not working in the office offered "little convincing evidence" that he met the policy requirements of being Actively at Work.

McKay fails to demonstrate that he was Actively at Work, i.e., working "in the place where . . . the job is normally performed" "for a minimum of 33 hours [a] work week." It is undisputed that McKay did not return to the U.S. XPress office, the place where his job is normally performed, after December 31, 2003. Although McKay argues that he had permission to work from home, he cites no authority that permission from his employer is sufficient to override the plain requirements of the policy that he perform his job in the normal location.[7]

Even assuming that permission to work from home somehow satisfies the location requirement, McKay fails to establish that he worked 33 hours a week. He offers nothing to show that he met this requirement and the record suggests that he did not. *See, e.g.*, Letter from Lisa Pate, U.S. XPress Vice President, to Eric Buchanan, Counsel for Paul McKay (Sept. 5, 2006) ("Although

---

[7]Of the cases McKay cites for the proposition that he was Actively at Work, only *Bingham's Estate v. Nationwide Life Ins. Co. of Columbus, Ohio*, 638 P.2d 352 (Kan. Ct. App. 1981), includes a location requirement in the policy and that provision was not in dispute nor addressed by the court.

11

I have no evidence that Paul was not working [while claiming to work from home in December 2003, and January 2004,], I also have no evidence that Paul was working during this time period."). In fact, McKay's own statements before the district court and this court on appeal indicate his "performance was increasingly ineffective," that he "appeared to accomplish very little" and "was getting very little done," and further, that he "was not actually earning the salary paid to him during his last weeks of employment with U.S. XPress."

McKay stresses that he received his full salary in January. He argues that if the work he performed in January 2004 rendered his pay 'earned' for purposes of the Unum policy, it should also render him Actively at Work under the Reliance policy. He extends this argument by asserting that because he was a salaried employee he must decide for himself how many hours to devote to a task. As this argument appears to admit, the fact that McKay drew a salary does not conclusively establish that he worked any specific number of hours, especially given the other indications in the record that he was not working Full-time. *See Turner v. Safeco Life Ins. Co.,* 17 F.3d 141 (6th Cir. 1994) (declining to conclude that a claimant, who was not working for a company in the active sense, satisfied the 30-hour a week requirement even though he remained on the payroll).

Based on the record, Reliance made a reasonable decision that McKay was not Actively at Work within the meaning of its policy; we must let this decision stand.

### b. Total Disability Began Before The Effective Date Of The Reliance Policy

Although McKay was not Actively at Work under the Reliance policy, he would be eligible for LTD benefits if he qualified under the policy's three-prong exception, which allows for coverage of employees insured on the date of the transfer, whose premiums had been paid, and whose Total Disability began on or after the effective date of Reliance's policy. Reliance considered McKay's

claim under this exception and concluded that McKay was ineligible for the Transfer Of Insurance Coverage provision because his Total Disability began before the policy's effective date. In support of this conclusion, Reliance noted that the Social Security disability determination established a disability date in December 2003, that McKay himself asserted a 2003 disability date in his application for benefits under the Unum policy, and that the last day McKay went to the office "to try to work" was in mid-December 2003.

Even though the Social Security definition of disability differs from Reliance's, this court has said that a Social Security disability determination "is relevant in an action to determine the arbitrariness" of an ERISA action. *Glenn v. Metlife*, 461 F.3d 660, 667 (6th Cir. 2006) (considering a decision to terminate LTD benefits). To the same end, it is undisputed that McKay attempted to claim benefits from Unum by establishing a disability date prior to January 1, 2004. It is also undisputed that McKay did not attend work during the effective period of the Reliance policy.

McKay argues that he was not disabled until January because he continued to draw a salary and again cites *Hansen* in support; he asserts that if he earned his salary so as to make him ineligible under the Unum policy, he could not have been disabled until he stopped earning his salary, which would have been in January 2004. As discussed previously, Unum's denial of McKay was not based on whether he "earned" his salary; it was based on whether he suffered a specified financial loss prior to the expiration of the Unum policy. Moreover, McKay's own statements before the district court and on appeal contravene the notion that he "earned" his salary in January. Yet, even if he had earned his salary and that were enough to support a January disability date, McKay's construction of the policy terms is not enough to defeat the reasonable, albeit different, conclusion drawn by Reliance. *Morgan*, 385 F.3d at 992.

13

Based on the evidence in the administrative record, Reliance made a reasonable determination that McKay's disability predated its policy. Accordingly, this decision is not arbitrary and we may not reverse it.

## C. Attorney Fees

Following the district court's remand for Reliance to consider McKay's claim, McKay moved for an award of attorney fees. The district court adopted the R&R and awarded attorney fees to McKay. Reliance now cross-appeals and asserts that the award was in error.[8] This court reviews the district court's decision to award attorney fees in an ERISA action for an abuse of discretion. *Gaeth v. Hartford Life Ins. Co.*, 538 F.3d 524, 528 (6th Cir. 2008).

In an ERISA action by a plan participant to recover benefits, "the court in its discretion may allow a reasonable attorney's fee . . . to either party." 29 U.S.C. § 1132(g)(1). This Circuit requires the awarding court to consider five factors as a part of its analysis in awarding fees:

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

*Gaeth*, 538 F.3d at 529 (quoting *Moon v. Unum Provident Corp.*, 461 F.3d 639, 642 (6th Cir. 2006)). No single factor is determinative. *Id*. Additionally, the party receiving the award need not be the "prevailing party"; rather, the "court in its discretion may award fees and costs to either party, as long as the fee claimant has achieved some degree of success on the merits." *Hardt v. Reliance Standard*

---

[8]McKay asserts that Reliance waived any argument that the fees were in error because it failed to assert that the remand order itself was in error. Reliance clearly opposed remand. As a result, no waiver occurred.

14

*Life Insurance Co.*, – U.S. —, 130 S.Ct. 2149, 2152 (2010) (internal citations and quotation marks omitted).

The district court considered each of the five factors. It found that Reliance's failure to conduct a "full and fair investigation" into McKay's claims, including its failure to consider the correct policy, amounted to arbitrary and capricious conduct that rose to the level of culpability required for a fee award; accordingly, factor one weighed heavily in McKay's favor. All parties conceded and the court agreed that Reliance had the ability to pay; thus, factor two weighed in McKay's favor. Factor three similarly weighed in McKay's favor as the district court found that there was a deterrent effect for plan administrators to avoid failing to provide the necessary full and fair review. McKay, Reliance, and the court agreed that the interest pursued by McKay was a private one, and, thus, the fourth factor favored Reliance. The fifth factor on the other hand, favored McKay; the court concluded that McKay had overcome the highly deferential arbitrary or capricious standard to achieve a remand and that further, because Reliance had failed to fully develop the record necessary for a full and fair review, McKay had the better position. Based on this analysis, the district court concluded that the scale tipped heavily in McKay's favor and, thus, an award of fees under § 1132(g)(1) was reasonable.

Similarly, the district court found that, even though the final merits of McKay's claim had not yet been resolved, he was "not a 'loser' in any sense; even if he ultimately is ineligible for benefits, he has still seen success on the merits because his case was remanded for further consideration."

The district court outlined the applicable law and provided a thorough explanation of its conclusion that an award was appropriate. No abuse of discretion occurred here. *See Gaeth*, 538

15

F.3d at 528-29 (noting that "[a]n abuse of discretion exists only when the court has the definite and firm conviction that the district court made a clear error of judgment in its conclusion upon weighing relevant factors." (citation omitted)).

Reliance argues in vain that the Supreme Court's decision in *Hardt* supports its position. Reliance is correct that the Court in *Hardt* did not give unlimited authority to courts to award fees under § 1132(g)(1). *Hardt*, 130 S.Ct. at 2158 (reminding readers that a "judge's discretion is not unlimited." (citation omitted)). Instead, it found that § 1132(g)(1) requires a claimant to show "ome degree of success on the merits," and not merely a "trivial success on the merits" or a "purely procedural victory." *Id.* (citations and quotation marks omitted). Here, the district court explicitly concluded that McKay's receipt of "another shot" at his claimed benefits was a "success on the merits because his case was remanded for further consideration"; in other words, McKay "achieved some degree of success" by achieving a remand. Indeed, McKay was just like the *Hardt* claimant in that he "persuaded the District Court to find that the plan administrator . . . failed to comply with the ERISA guidelines" and that, as a result, he "did not get the kind of review to which [he] was entitled under the applicable law." *Hardt*, 130 S.Ct. at 2159 (internal citation and quotation marks omitted). Reliance's reliance on *Hardt* is misplaced; *Hardt* supports McKay's position.

### III. CONCLUSION

Pursuant to the terms of each policy, both Unum and Reliance made reasonable determinations that McKay was not entitled to LTD benefits. Because they did not act arbitrarily or capriciously, we **AFFIRM** the benefit denials. In addition, because the district court did not abuse its discretion when it awarded attorney fees to McKay, we **AFFIRM** the award.