Rashid v. Barr
BIA
Loprest, IJ
A088 513 116

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 12th day of April, two thousand nineteen.

PRESENT:
PIERRE N. LEVAL,
REENA RAGGI,
RICHARD C. WESLEY,
*Circuit Judges.*

_____

MAHFUZ RASHID, AKA MAHFUZUR RASHID,
*Petitioner,*

v.                                                        17-293
                                                         NAC

WILLIAM P. BARR
UNITED STATES ATTORNEY GENERAL,
*Respondent.*

_____

FOR PETITIONER:            Amy Nussbaum Gell, Gell & Gell, New York, NY.

FOR RESPONDENT:            Chad A. Readler, Principal Deputy Assistant Attorney General; Claire L. Workman, Senior Litigation Counsel; Juria

L. Jones, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is GRANTED.

Petitioner Mahfuz Rashid, a native and citizen of Bangladesh, seeks review of a January 17, 2017, decision of the BIA affirming a May 20, 2016, decision of an Immigration Judge ("IJ") denying Rashid's application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Mahfuz Rashid,* No. A088 513 116 (B.I.A. Jan. 17, 2017), *aff'g* No. A088 513 116 (Immig. Ct. N.Y. City May 20, 2016). We assume the parties' familiarity with the underlying facts and procedural history in this case.

Under the circumstances of this case, we have reviewed the IJ's decision as supplemented and modified by the BIA. *See Yan Chen v. Gonzales*, 417 F.3d 268, 271 (2d Cir. 2005); *Xue Hong Yang v. U.S. Dep't of Justice*, 426 F.3d 520, 522 (2d Cir. 2005); *see also Yun-Zui Guan v. Gonzales*, 432 F.3d 391, 394 (2d Cir. 2005). The applicable standards of review are

2

well established. *See* 8 U.S.C. § 1252(b)(4)(B); *Xiu Xia Lin v. Mukasey*, 534 F.3d 162, 165-66 (2d Cir. 2008).

The governing REAL ID Act credibility standard provides that the agency must "[c]onsider[] the totality of the circumstances," and may base a credibility finding on an applicant's "demeanor, candor, or responsiveness," the plausibility of his account, and inconsistencies in his or his witness's statements, "without regard to whether" they go "to the heart of the applicant's claim." 8 U.S.C. § 1158(b)(1)(B)(iii); *see also Xiu Xia Lin*, 534 F.3d at 163-64, 166-67. "We defer . . . to an IJ's credibility determination unless . . .it is plain that no reasonable fact-finder could make such an adverse credibility ruling." *Xiu Xia Lin*, 534 F.3d at 167. As set forth below, one of the agency's two omission findings is erroneous, and we cannot confidently predict that remand would be futile because the only other basis for the adverse credibility determination—a demeanor finding—contains errors.

I. <u>Omissions</u>

"[W]here . . . perceived incongruities in an asylum applicant's testimony are not plainly obvious, an IJ cannot rely on them to support an adverse credibility ruling without

first identifying the alleged inconsistencies for the applicant and giving the applicant an opportunity to address them." *Ming Shi Xue v. BIA*, 439 F.3d 111, 121 (2d Cir. 2006). "[I]t is the IJ's duty to make sure that the record we review includes *both* the alien's explanation for any non-'dramatic' discrepancies, on the one hand, and the IJ's reasons for rejecting 'significant' explanations, on the other." *Id.* at 125. The concerns underlying this duty may be heightened when omissions are involved. *Id.* at 125 n.17 ("[W]e should bear in mind that the language barriers, often present in asylum proceedings . . . may make applicants more reluctant to volunteer information for which they were not asked."). A "contradiction is obvious . . . where the relevant inconsistency is sufficiently conspicuous as to be evident, and where it is central enough to the applicant's claim that it could not have been reasonably overlooked by the parties or the IJ." *Id.* at 120. "[C]ontradictions . . . are not obvious . . . where they are not premised on 'dramatically different' accounts of the alleged persecution." *Id.* at 121.

We acknowledge that the agency reasonably found that Rashid omitted threatening visits by Awami League ("AL") members to his home from his testimony, which he had cited in

4

his written application. *See Xiu Xia Lin*, 534 F.3d at 166-67 & n.3. Rashid stated in his application that AL members showed up at his home to warn his family and to threaten him; his father's letter stated that AL members came to his home and pushed and threatened him. But Rashid did not mention these incidents during his testimony. Rashid's argument here—that there was no omission because he testified to receiving threatening phone calls—does not resolve the problem. Rashid was specifically asked if there was anything other than telephonic threats after his attack, and he responded that there was not, thereby contradicting his application and his father's letter.

Nonetheless, Rashid is correct that the agency erred in finding that he omitted a 2007 altercation at a rally from his testimony. Rashid stated in his application that the AL caused a physical altercation at a Bangladesh Nationalist Party ("BNP") rally at a college in April 2007, but he escaped unhurt. At the outset of his testimony, when asked what kind of problems he *personally* experienced, Rashid stated he had verbal conflicts and arguments with the AL due to his role as a local BNP press secretary. He was then asked whether anything went beyond arguments, and he described a September

2009 beating in which he was stabbed in the chest and then hospitalized for 12 days. He was never given an opportunity to testify in narrative form or asked to describe incidents prior to the September 2009 attack in which he did not experience physical harm. Moreover, even if this could be considered an omission, the IJ erred by not asking Rashid to explain the omission given that it did not result in "dramatically different accounts" of the harm Rashid suffered. *Ming Shi Xue*, 439 F.3d at 120 (internal quotation marks omitted). And while Rashid had an opportunity to state anything else he wanted to tell the IJ, that opportunity does not discharge an IJ's duty of confrontation when non-obvious omissions are involved. *Id.* at 125. Although the Government is correct that Rashid did not argue to the BIA that the IJ failed to confront him with this omission, he did challenge the IJ's reliance on the finding. Because we may consider "specific, subsidiary legal argument[s]" not raised before the BIA, we can consider Rashid's argument. *Gill v. INS*, 420 F.3d 82, 87 (2d Cir. 2005). As we have explained, without the requirement that IJs solicit explanations for non-obvious discrepancies, "asylum applicants would frequently be denied the opportunity to clarify genuinely consistent testimony

6

that the IJ has unwittingly misconstrued.  And, conversely, immigration judges could prematurely decide that testimony is inconsistent when, in fact, the purported discrepancies readily admit of explanations which the IJ would find valid." *Ming Shi Xue*, 439 F.3d at 122.  Further, the probative value of this omission is diminished given that Rashid was not asked to describe incidents prior to the September 2009 attack in which he did *not* experience physical harm.  *See Hong Fei Gao v. Sessions,* 891 F.3d 67, 78 (2d Cir. 2018) ("[T]he probative value of a witness's . . . silence on particular facts depends on whether those facts are ones the witness would reasonably have been expected to disclose.").

II.  Remand Futility Analysis

Because one of the two omissions underlying the credibility determination is erroneous, we must assess whether remand would be futile.  *Lianping Li v. Lynch*, 839 F.3d 144, 149 (2d Cir. 2016).

> The overarching test to deem a remand futile is when the reviewing court can confidently predict that the agency would reach the same decision absent the errors that were made. To determine whether remand would be futile, a reviewing court should assess the entire record and determine whether, based on the strength of the evidence supporting the error-free findings and the significance of those findings, it is clear that the agency would adhere to its decision were the petition remanded.

7

*Id.* (internal quotation marks and citation omitted). As discussed below, we cannot not deem remand futile because the only other finding underlying the adverse credibility determination—demeanor—contains errors, and the IJ's apparent failure to consider Rashid's corroborating evidence when assessing his credibility further erodes confidence in the credibility determination.

A. <u>Demeanor</u>

Although we "give particular deference to credibility determinations that are based on the adjudicator's observation of the applicant's demeanor, . . . we grant lesser deference to credibility determinations that are based on an analysis of testimony . . . [and] will reverse where . . . [a] determination is based upon speculation or upon an incorrect analysis of the testimony." *Jin Chen v. U.S. Dep't of Justice*, 426 F.3d 104, 113 (2d Cir. 2005) (internal quotation marks and citations omitted). We cannot defer to two of the bases for the demeanor finding: one is simply incorrect, and the other is speculative.

First, the BIA affirmed the IJ's negative demeanor finding because the IJ observed *numerous* long pauses before Rashid answered questions on cross-examination; however,

8

there were only three such pauses, and two occurred while Rashid was questioned about a date discrepancy that the IJ found to be a result of a translation error. The attorney for the Department of Homeland Security ("DHS") questioned Rashid about minutes from a local BNP committee meeting reflecting that he had been elected press secretary from 2014 to 2015, which post-dated his arrival in the United States. However, after the translator confirmed that the original document read 2004 to 2005, the IJ stated that he could not find a discrepancy between the document and Rashid's testimony. The BIA thus erred in finding that Rashid's pauses while he was questioned about the inaccurately translated dates reflected a lack of credibility.

Second, the demeanor finding is based on an analysis of testimony, but is not grounded in the record. The IJ stated that Rashid did not distinguish his role as press secretary from the roles of other rank-and-file BNP members, but the IJ never asked Rashid to distinguish these duties from those of a rank-and-file BNP member. *Cf*. *Ming Shi Xue*, 439 F.3d at 125. Moreover, the IJ did not elaborate on the role of a rank-and-file member of the BNP, and it is unclear what the role of an ordinary member of that political party would be.

9

Rashid did testify that his role as local press secretary included arranging meetings, hanging posters, recruiting, and setting up microphones, which do not appear to be duties of an ordinary member of a political party.

As for the IJ's additional demeanor findings—that Rashid was vague and nonresponsive when asked about his location from August 2010 to January 2013 and why he returned from Dhaka to Noakhali, and that he was evasive when asked about the BNP's affiliation with Islami Okiya Jote and Jammat-e-Islami Bangladesh—Rashid's hesitations, uncertainties, and incompleteness in his answers, which the IJ cited as supporting a finding of lack of credibility appear attributable, at least in part, to the DHS attorney's confusing phrasing and compound questions.

B. Corroboration

"An applicant's failure to corroborate his or her testimony may bear on credibility, because the absence of corroboration in general makes an applicant unable to rehabilitate testimony that has already been called into question." *Biao Yang v. Gonzales*, 496 F.3d 268, 273 (2d Cir. 2007). Although the agency has an obligation to consider all evidence relevant to an applicant's claim, it need not

"expressly parse or refute on the record each individual argument or piece of evidence offered by the petitioner." *Wei Guang Wang v. BIA*, 437 F.3d 270, 275 (2d Cir. 2006) (internal quotation marks omitted). "[W]e presume that an IJ has taken into account all of the evidence before him, unless the record compellingly suggests otherwise." *Xiao Ji Chen v. U.S. Dep't of Justice*, 471 F.3d 315, 336 n.17 (2d Cir. 2006).

The agency's treatment of Rashid's corroborating evidence further erodes confidence in the credibility determination. The IJ did not address the weight to be accorded to Rashid's individualized corroborating evidence, which included hospitalization records reflecting surgical repair of an incised wound of the chest consistent with his allegation of a 2009 attack. Nor did the IJ's alternative reasons for denying relief—that Rashid did not sufficiently establish harm rising to the level of persecution or that the attackers were AL members—relieve the IJ of his obligation to consider Rashid's corroborating evidence in the context of the credibility determination because the alternative reasoning assumed Rashid's credibility as to important parts of his allegations. The BIA did not cure the problem because it neither adopted the alternatives, nor considered whether

11

Rashid's documentary evidence supported his credibility.

Given the substantiality of the errors and problems in the agency's reasoning noted above, we cannot conclude that remand would be futile. The uncompromised adverse credibility findings do not provide substantial support for the adverse credibility determination. *Lianping Li*, 839 F.3d at 149.

For the foregoing reasons, the petition for review is GRANTED, the BIA's decision is VACATED, and the case is REMANDED for further proceedings. As we have completed our review, any stay of removal that the Court previously granted in this petition is VACATED, and any pending motion for a stay of removal in this petition is DISMISSED as moot. Any pending request for oral argument in this petition is DENIED in accordance with Federal Rule of Appellate Procedure 34(a)(2), and Second Circuit Local Rule 34.1(b).

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court